SETH W. WARFIELD *vs.* BENJAMIN H. DORSEY.

*Chancery Sales not within the Statute of Frauds—Mortgagee's Sales—Sheriff's Sales—Art. 64 of the Code, entitled " Mortgages."*

A Chancery sale of land, made by a trustee under the order of Court, and reported to the Court for its ratification, is not within the fourth section of the Statute of Frauds. So, in the case of a sale made under the authority given in a mortgage, as provided for by Article 64 of the Code.—*Secus*, as to sheriffs' sales.

APPEAL from the Circuit Court for Howard County, in Equity.

In this case, the appellee, assignee of two mortgages, each of which contained a power of sale, as provided for by Article 64 of the Code, having complied with the requirements of that Article, advertised the mortgaged property for sale, and on the 28th of December, 1872, sold the same at public sale to the appellant, and on the 1st of January, 1873, filed his report of the sale in the Circuit Court for Howard County. The fact of the sale was established, and no question was raised as to its fairness. The appellant, however, on the 22nd of February, 1872, filed exceptions to its ratification, relying specifically upon the Statute of Frauds; and the Court having overruled his exceptions and ratified the sale, he took this appeal.

The cause was argued before BARTOL, C. J., STEWART, BOWIE, GRASON and MILLER, J.

*George W. Sands* and *William M. Merrick*, for the appellant.

Warfield *vs.* Dorsey.

All judicial sales, as well those made by trustees in Chancery, as by the sheriff under execution, are within the mischief. and the terms of the Statute of Frauds. *Barney vs. Patterson's Lessee*, 6 *H. & J.*, 205; *Boring's Lessee vs. Lemmon*, 5 *H. & J.*, 223; *Ennis vs. Waller*, 3 *Blackford*, 472; *Browne's Statute of Frauds, secs.* 263, 264, 265, 266; *Simonds vs. Catlin*, 2 *Caines*, 65; *Jackson vs. Catlin*, 2 *Johnson*, 259; *Robinson vs. Garth*, 6 *Ala.*, 207; 3 *Parsons on Contracts*, 11; *notes*.

The supposed rule to the contrary, derived from sales in England before Masters in Chancery, has no application here, even if not positively overruled by the authorities cited. *Att'y Gen'l vs. Day*, 1 *Vesey*, 218; *Daniel's Chancery Practice*, 1264, 1282.

Sales made by assignees, attorneys, or mortgagees, under powers in the mortgage, are not judicial sales, nor conducted by a public officer appointed by the Court; but sales of a private nature, and within the policy and letter of the Statute. Perhaps there are special reasons why adverse sales thus made by interested parties, or agents immediately appointed by them, should be thus guarded. These powers of sale existed at Common Law and independently of Art. 64 of the Code, which has not given them new privileges or exemptions, but has imposed restrictions upon their exercise. *Wilson vs. Watts*, 9 *Md* , 459; 4 *Kent Comm.*, (*marg.*,) 146.

*Henry E. Wootton*, for the appellee.

Sales made under decrees of Courts of Equity are neither within the reason nor terms of the 4th section of the Statute of Frauds. The Court is the vendor, and by the decree, the particular property is designated, and the manner and terms of sale are pointed out. The trustee has merely to report the name of the purchaser and the amount bid, to the Court for its consideration. The Court is the guardian of the rights of all parties interested in the property, and acts for them.

The trustee has no such interest in the property as would enable him to enter into an agreement. To constitute an agreement there must be *aggregatio mentium*, and the parties must be competent and willing to contract. The trustee cannot convey the property; he can make no contract to convey it, and unless the report of the trustee is confirmed by the Court, no title passes, and there is no binding sale. When the report is ratified, then there is a binding contract; any note or memorandum in writing before that period would be without value. *Atty. Genl. vs. Day,* 1 *Ves. Sr.,* 218; *Bragden vs. Brogbear,* 12 *Ves.,* 466; 4 *Greenleaf's Cruise, Tit.* 32, ch. 3, par. 8; *Chitty on Contracts, marg. p.* 271, *(note y;)* 1 *Sugden on Vendors,* ch. 3, sec. 6, par. 3, and ch. 2, sec. 1, par. 53; *Smith vs. Arnold,* 5 *Mason,* (*U. S. C. C.,*) 416; *Jenkins, et al. vs. Hogg,* 2 *S. C. Constitutional Reports,* 835; *Halleck vs. Guy,* 9 *Cal.,* 182; *King vs. Gunnison,* 4 *Barr.,* 172; *Fulton vs. Moore,* 25 *Penna. State Rep.,* 468; *Trice vs. Pratt,* 1 *Dev. & Bat. Eq.,* 626; *Hegeman vs. Johnson,* 35 *Barbour,* 203; *Harrison vs. Harrison,* 1 *Md. Ch. Rep.,* 331; *Andrews vs. Scotton,* 2 *Bland,* 636.

A purchaser under a decree does, by the act of purchase, submit himself to the jurisdiction of the Court in that suit, and his bidding makes him a party to the cause. *Wood vs. Mann,* 3 *Sumner C C.,* 318; *Requa vs. Rea,* 2 *Paige,* 339; 1 *Sugden on Vendors,* ch. 2, sec. 1, par. 55.

So, in a sale under a power contained in a mortgage as authorized by Art. 64 of the Code, the Court is the vendor. The *power* contained in the mortgage is a *decree,* so made by the agreement of the parties. Under the power so substituted for the decree, the property is offered, the report is made to the Court, and when the same is ratified, the sale is complete and the contract binding.

If the purchaser does not comply with the terms of sale, the Court will, upon petition, pass an order for

resale of the property at his risk in this case, as in case of sale under a decree. *Cockey vs. Cole,* 28 *Md.,* 283; *Wilson vs. Watts,* 9 *Md.,* 459; *Code, Art.* 64, *sec.* 5 *and seq.,.and Art.* 16, *sec.* 136.

STEWART, J., delivered the opinion of the Court.

If there was any irregularity or unfairness about the sale reported in this case, to the prejudice of the appellant, he had the right and ample opportunity to have shown it. This has not been done, but he relies upon the Statute of Frauds, 29th Ch. II., chap. 3, as a sufficient defence for his non-compliance with the terms of sale; and the question now involved, is, whether that Statute, requiring a memorandum in writing as to certain sales of land, applies to a chancery sale; or sale under mortgage, as provided by the 64th Art. of the Code.

The learned Judge of the Circuit Court, in delivering his opinion, has shown much and commendable research, and furnished a conclusive argument as to the inapplicability of the Statute to sales of this description.

Chancery sales are neither within the letter of the Statute nor embraced by its policy. In regard to such sales, its provisions are not obligatory upon the Court, nor is there any reason why they should be applied upon any principle of analogy.

Such sales are conducted under the decrees or orders of the Court, which prescribe the terms, and are always guarded by its superintendence, and, therefore, cannot be considered within the mischief intended to be provided against by that celebrated Statute.

Every intendment will be made to support them. The Court acts for all the parties, through its officer, the trustee, and they look to it for protection against the consequences of his acts or omissions. *Kauffman vs. Walker,* 9 *Md.,* 240.

Whether the sale is made by a trustee, according to our practice, or by a master, as in England, we have been

referred to no case, where the sale, if made under the authority of the Court, has been set aside, upon the ground that the sale was not evidenced by a memorandum in writing, as provided by the Statute.    On the contrary, the authorities are all the other way, so far as we have discovered.    Chancellor BLAND, in *Andrews vs. Scotton*, 2 *Bl. C.*, 29, has very fully discussed the subject as to the authority and practice of the Court in regard to sales made in pursuance of its decrees or orders, and his rulings have been affirmed by this Court in *Anderson vs. Foulke*, 2 *H. & G.*, 346.    Throughout the extent of his opinion, which displays laborious research, and which is incorporated at length in the report of that case, there is no allusion by the Chancellor or the Court of Appeals to the Statute of Frauds, as affecting sales made by the Court, or under its direction.

In such case it is well settled, the Court is in truth the vendor, and not the trustee, who is its mere agent, and there is no sale until its approval.

The public auction of the property is a part of the proceeding constituting the sale ; and the bidders make themselves parties, and, as such, have the right to interfere in the proceedings ; their bids are propositions, and when accepted by the trustee acting for the Court, and the property is struck off accordingly, they have no power, at their pleasure, to retract them, and thus baffle and defeat the sale.    If they fail to comply with all or any of the terms proposed and accepted, the Court has the power to compel compliance by attachment or other suitable process, according to the nature of the case. *Code, Art.* 16, *sec.* 131.

These provisions were intended to clothe the Court with adequate authority, if there was any doubt of its existence before, to compel compliance with the terms prescribed by its decree or order for the sale of the property.

In the case of *Richardson vs. Jones*, 3 *G. & J.*, 164, before the enactment of the Code, these powers of the Court were fully recognized. It was distinctly held by this Court that, where a sale is made under a decree or order in Chancery, and no bond or security is given for the payment of the purchase money, it was the practice, sanctioned by this Court in *Anderson vs. Foulke*, 2 *H. & G.*, 346, to compel the purchaser to complete his purchase by an order on him, in a summary way, to pay or bring the money into Court ; and that from necessity, arising from the peculiar character of the transaction. Before the ratification the trustee cannot sue, because the sale is not complete and binding—the contract is not perfect— nor can he sue at law after the ratification, because it becomes thereby a sale by the Court—a contract with the Court, and the whole reasoning of the Court is utterly inconsistent with any theory, that the contract of sale was affected by the Statute of Frauds.

Chancellor JOHNSON, in *Harrison vs. Harrison*, 1 *Md. Ch. Dec.*, 331, conforming to the practice of the State, denied the applicability of the Statute to chancery sales. This practice is not peculiar to our State, but holds everywhere, so far as we can discover.

In *Wood vs. Mann*, 3 *Sumner*, 310, 318, Judge STORY refers to the case of *Richardson vs. Jones*, 3 *G. & J.*, 164, and goes further: "No doubt is now entertained that a Court of Equity may, by attachment compel a purchaser at a sale by the Master, to complete his purchase by paying in the purchase money. It stands upon the plainest principle of the Court, that he who makes himself a party to the proceedings of the Court, and undertakes to do a particular act, under the decretal orders of the Court, may be compelled to perform what he has undertaken. It is a mere incident to the due exercise of the principal jurisdiction, and indispensable to the enforcement of the orders of the Court upon persons who have

submitted themselves to its jurisdiction; a sale might otherwise become a mere mockery and give entire immunity to purchasers to speculate upon the chances of the sale. The notion is utterly groundless, that no person but a direct party to the suit, can be made subject to the orders or process of the Court."

In *Smith vs. Arnold,* 5 *Mason,* 420, under the Rhode Island Statute of Frauds, the same doctrine is reiterated. " In sales directed by the Court of Chancery, the whole business is transacted by a public officer under the guidance and superintendence of the Court itself; the sale is not final until a report is made to the Court and approved. Either party may object to the report, and the purchaser himself who becomes a party to the sale, may appear before the Court, and if any mistake has occurred, may have it corrected. He becomes a party in interest, and may represent and defend his own interests; and if he acquiesces in the report, he is deemed to adopt it, and is bound by the decree of the Court, confirming the sale. He may be compelled, by the process of the Court, to comply with the terms of the contract. So that the whole proceedings are under the direction of the Court; and the case does not fall within the mischiefs supposed by the Statute."

Chancellor KENT, in *Brasher vs. Cortlandt,* 2 *Johns. Chy. R.,* 505, in regard to the power of the Chancery Court to compel a purchaser to complete his purchase by attachment, entertains similar views. "I do not mean at present," he remarks, " to lay down any general rule on the subject of coercing a purchaser by attachment; but I ought not to hesitate, under the circumstances of this case; and I have no doubt the Court may, in its discretion, do it in every case, where the previous conditions of the sale have not given the purchaser an alternative. Here it has become necessary, in order to give due effect

to the authority and process of the Court, and to preserve them from being treated with contempt."

Lord HARDWICKE, in the case of *Attorney Genl. vs. Day*, 1 *Vesey, Sr.*, 218, ruled that the Statute had no application to Chancery sales; this seems to be the first case in which any question was made as to the operation of the Statute over such sales. In deciding upon the sale then before him, he refers to it as a *judicial* sale in general terms. In *Simonds vs. Catlain*, 2 *Caines*, 61, where Chancellor KENT had to determine whether the Statute applied to a *Sheriff's sale*, he took some exception to Lord HARDWICKE's language as too broad; but we agree with Mr. BROWN in his treatise on the Statute, sec. 265, that there was no ground for the criticism.

Chancellor KENT was deciding as to the *sheriff's sale*, where the Statute did apply.

Lord HARDWICKE was disposing of a *chancery* sale where the Statute did not apply, being a *judicial* sale, that is, a sale made by the Court, or by its direction, and upon the terms and rules provided by decree or order; and not according to the provisions of the Statute.

We do not understand Chancellor KENT, as excepting to the ruling of Lord HARDWICKE, that the Statute did not apply to a *chancery sale*; but to its application to a *sheriff's sale*, if that was the meaning; and that the term *"judicial sale,"* might from its general import be applied to a *chancery sale.*

*Chitty on Con. 9th Am. Ed.*, 308, recognizes the law as established, that sales of property in chancery are not within the Statute and refers to the case of the *Attorney Gen. vs. Day*, with numerous other authorities.

In *1st Sugden on Vendors*, 92, the reason assigned why a sale before the Master is not within the Statute, is, that there is no danger in such case, of either fraud or perjury.

*Jenkins vs. Hogg*, 2 *Const'l R.*, (*S C.*,) 835, and *Brent vs. Green*, 6 *Leigh*, (*Va.*) 16, recognize the rule as

laid down in *Attorney Genl. vs. Day ;* and this last case characterizes a *judicial* sale as one made under a decree of the Chancery Court, which no doubt was the meaning of Lord HARDWICKE, and holds that the sales exempted from the restrictions of the Statute, and should be confined to such as are *technically judicial sales*—"that it cannot be pretended that a sale by a sheriff of an insolvent's estate is a judicial sale—the sheriff is bound by the law to sell and convey, and he performs these acts without invoking to his aid the judgment of any Court, whether of law or equity."

The cases referred to in 3 *Parsons on Cont.*, 11, *note L,* as overruling the doctrine held in *Attorney Genl. vs. Day,* do not go to the extent claimed, but merely put *sheriffs' sales* of land on the same footing with other *auction sales,* and the case of *Barney vs. Patterson,* 6 *H. & J.,* 182, one of his references, recognizes the *sheriff's sales* of land as being within the Statute, and requiring some memorandum of writing to be made.

Probably it will be found upon a strict examination of all the cases, there will be none to distrust the doctrine laid down by Lord HARDWICKE in *Attorney Genl. vs. Day.*

Certainly from our researches we have not been able to discern any ; on the contrary, we think from the peculiar character of the chancery sale through the agent of the Court, and the reasons that ought to govern, as well as from the authority of adjudged cases, that the provisions of the Statute do not and ought not to be applied to such sales.

In sales to be made under authority given by a mortgage provided for by the 64th Art. of the Code, when they are brought within the control of the Court of Chancery, the same rules must be applied as to chancery sales generally. These provisions of the Code confer no special power upon the Court, and give to it no new or extraordinary jurisdiction, but prescribe another source for the

exercise of its ordinary authority.  · Foreclosure of mort-
gages is one of the usual attributes of a Court of Chan-
cery, and the statute provides for their summary employ-
ment by substituting the power contained in the mort-
gage for a decree of sale.   *Cockey vs. Cole*, 28  *Md.*, 276.

The 4th sec. of the Article provides that before a sale
shall be made by any person so authorized, bond shall be
given by him, to be approved by the Judge or Clerk of
the Court, to abide by any order or decree that shall be
made by the Court in relation to the sale of the mortgaged
property.

When this has been done the proceedings are brought
under the cognizance and guidance of the Court, and to be
conducted and determined in all respects as ordinary sales
by a trustee appointed by decree of the Court.

The 8th section is specific, requiring all such sales to
be reported under oath to the Court, and the same pro-
ceedings on such report, as if the same were made by a
trustee under a decree, and giving the Court full power
to hear and determine any objections against the sale by
any person interested, and to confirm or set aside the
sale.

There can be no doubt that sales of this description
were intended by the provision of the Code to be under
the superintendence of the Court, and governed by the
same rules as those made by a trustee appointed by decree
of the Court.   In regard to them, the Court acts for all
the parties interested and who are entitled to interfere;
they are incomplete until ratified by the Court, and there
is no reason why the Statute of Frauds should apply to
them more than the others.   There is no ground for dis-
crimination, and they are not within the provisions of
that Statute.

*Order affirmed.*