GUSTAV W. LURMAN, and JOHN H. FOWLER, Trustees
*vs.* JOHN HUBNER.

*Construction of Will—Indefinite failure of Issue—Color
of Title—Adverse possession—Statute of Limitations—
Trustees' Sale—Appeal.*

A testator died in the year 1840, seized of a tract of land which
he devised to his son Robert with a limitation over to his son
Charles, in case Robert should die without lawful issue. Robert
devised the land to W., and died in 1845, without issue. Charles
in the year 1856, by deed duly recorded, conveyed the land to L.
who being in possession under said deed, conveyed the same to
L., Jr., in 1861, from which time there was a regular chain of
conveyances down to March, 1873, when the property was con-
veyed to F. who died in 1874, intestate, seized and possessed
thereof, and his title descended to his heirs. On exceptions
filed to the title by the purchaser of said land at a sale made in
the year 1890, under a decree for a partition among the heirs of
F., it was HELD:

1st. That the limitation over after the death of the testator's son
Robert being after an indefinite failure of issue, was void, but
would give color of title.

2nd. That the deed from Charles to L. gave the latter color of
title, and his entry under it invested him with adverse possession
of the whole tract.

3rd. That the title which L. thus acquired being transmitted,
with all its advantages, through a chain of conveyances to F. in
1873, the title conveyed was sufficient to draw to it the construc-
tive possession of the whole tract, even without an entry upon
it by the grantees subsequent to L.

4th. That from the time of the deed by Charles to the time of the
sale by the trustees in 1890, to the exceptant, more than thirty-
four years of continuous adverse possession under color of title,
having elapsed; and from the time of the deed to L., Jr., about
thirty years of the same kind of possession having passed; and
at and after the time of this latter deed the possession being

proved by registered deeds, the title in question was perfectly good.

5th. That all claims on the part of the heirs of W. the devisee of Robert were effectually barred by the Statute of Limitations which, having began to run against him in his life-time was not arrested by his death.

Trustees appointed by decree of Court to make sale of land cannot maintain an appeal from an order sustaining exceptions by the purchaser to the sale; and if the appeal be taken in their official capacity only, it cannot be sustained by the fact that one of the trustees is a party in interest.

APPEAL from the Circuit Court for Baltimore County, in Equity.

This appeal was taken from the order of the Court below sustaining exceptions by the purchaser to the ratification of the sale in the proceedings mentioned, and setting aside the same. The case is stated in the opinion of the Court.

The cause was argued before ALVEY, C. J., MILLER, ROBINSON, IRVING, BRYAN, and McSHERRY, J.

*Robert Riddell Brown,* and *D. G. McIntosh,* (with whom was *David Stewart,* on the brief,) for the appellants.

*George Whitelock,* and *Samuel D. Schmucker,* (with whom was *James S. Calwell,* on the brief,) for the appellee.

BRYAN, J., delivered the opinion of the Court.

The appellants were appointed by a decree of a Court of equity to make sale of the real estate of Robert Fowler, deceased, for the purpose of partition among his heirs. Two certain lots of ground were sold to John Hubner, and he filed exceptions to the ratification of the sale, alleging that the title was defective.

It appears that Robert R. Richardson, died in the year 1840, seized and possessed in fee of a tract of land which includes the lots in· question.  He devised the land to his son, Robert R. Richardson, Junior, with a limitation over to his son Charles, in case Robert should die without lawful issue.  Robert the son, devised the land to Nathan H. Ware, and died in the year 1845 without leaving issue.  After the death of Robert, the son, two creditors' bills were filed for the sale of his real estate for the payment of his debts, on the allegation of the insufficiency of his personal assets.  In each of these bills it was alleged that Robert, the son, died seized and possessed of this land and other real estate.  No steps have been taken in the prosecution of either of these suits since 1851, and it is shown by an agreement of counsel that since the appeal was taken in this case, they have been dismissed.  Charles Richardson, in the year 1856, by deed duly recorded conveyed this land to William Leach. No title is shown in Charles Richardson, except such as arose under his father's will by the limitation in the event of the death of Robert without lawful issue. This being after an indefinite failure of issue was clearly void; but it would give color of title.  We learn nothing from the record with respect to possession by Charles except so far as it may be inferred from his deed to Leach, and the circumstances subsequent to it.  It is very certain that Leach claimed title under that deed, and it is sufficiently shown that he took possession under it, and that the greater portion of it was fenced and cultivated. The Act of 1852 dispensed with the necessity of proving possession by actual enclosure.  Before the passage of that Act the law was declared in *Hoye vs. Swan's Lessee*, 5 *Md.*, 248, as follows: "First, where one enters not under any deed or written title, but merely assuming the possession with claim of right, the ouster he effects extends no further than he occupies, cultivates, encloses

or otherwise excludes the owner from. Second, but if one enters under color of title, by deed or other written document, and occupies and improves the land, he acquires in law actual possession, to the extent of the boundaries contained in the writing, and this though the title conveyed to him by the deed be good for nothing." William Leach, being thus in possession of the land, in 1861 conveyed it to William Leach, Junior, by deed duly recorded. From this time there is a regular chain of conveyances down to March 23rd, 1873, when the property was conveyed to Robert Fowler. He died in 1874, intestate, seized and possessed of the land, and his title descended to his heirs-at-law. None of the deeds appear in the record; but there is an agreement of counsel that they were executed and recorded. If we knew the recitals of the deed from Charles Richardson to Leach, we might probably have more satisfactory information in regard to his possession. But disregarding everything which occurred previously to this deed, it is impossible that we should fail to see that Leach's deed gave him color of title, and that his entry under it invested him with adverse possession of the whole tract. In *Hoye vs. Swan's Lessee,* at page 248, this Court speaking of the character of possession under color of title says "It appears to be immaterial whether the title be valid or not; provided the entry and claim be *bona fide* under that title." And on page 250, the Court quotes with approbation the following: "Entry under claim of title is generally sufficient to constitute an adverse possession, and it is not material whether the title be valid or not. But if claim is not founded on a deed or writing, the possession is limited to actual occupancy and substantial enclosures, definite and notorious." The title which Leach thus acquired was transmitted with all its advantages through a chain of conveyances to Robert Fowler in 1873; the title conveyed being sufficient to draw to it constructive

possession of the whole tract, even without an entry upon it by the grantees subsequent to the elder Leach. From the time of the deed by Charles Richardson to the time of the sale by the trustees to Hubner in November, 1890, more than thirty-four years had elapsed of continuous adverse possession under color of title; and from the time of the deed to William Leach, Junior, about thirty years of the same kind of possession had passed. At and after the time of this latter deed, the possession is proved by registered deeds and there is none of the uncertainty which may arise from the testimony of witnesses. We see nothing in the record to show that this title is not perfectly good. The only title countervailing that of Charles Richardson was the devise to Nathan H. Ware by Robert R. Richardson, the younger, whose will was proved in November, 1845. It is shown that Ware died between 1860 and 1870, and that he was living at the time of the battle of Gettysburg. The Statute of Limitations began to run against him in his life-time, and it is well settled that its running was not arrested or suspended by his death. Consequently all claims on the part of his heirs are effectually barred. It was said in *Emmert vs. Stouffer*, 64 *Md.*, 554: "A Court of equity will not compel a purchaser to take a title which is not free from reasonable doubt, and which might in reasonable probability expose him to the hazards of litigation." We see no reasonable ground to apprehend litigation about the title involved in this case. The title of Nathan H. Ware vested in November, 1845; so far as the evidence shows he never took any steps to assert it. He seems to have acquiesced in the claim of title on the part of Charles Richardson. But at all events, one thing seems to be clear from the evidence; that is, that the Statute having commenced to run against him in his life-time has long since become a complete bar to all pretensions derivable from his title.

Lurman and Fowler, Trustees *vs.* Hubner.

We are of opinion that the exceptions of the purchaser to the ratification of the sale ought to have been over-ruled. But a motion has been made to dismiss this appeal, and if this motion is well grounded, it will not be in our power to reverse the order of the Circuit Court.

The appeal was taken by the trustees appointed by decree of the Circuit Court to make sale of the land. The sale is a transaction between the Court and the purchaser. The Court itself is the vendor and the trustees are merely the Court's agents to carry into effect its orders. It was the duty of the trustees to report to the Court the offer of the bidder, and if the Court had ratified the sale, the contract of purchase would have been complete. *Speed vs. Smith,* 4 *Md. Ch. Dec.,* 309; *Glenn, Trustee vs. Clapp,* 11 *Gill & Johnson,* 8. It is manifest, therefore, that the trustees had no interest in the land, or in the proceeds of the sale. The parties interested were the owners of the land and the purchaser. In *Ellicott vs. Ellicott,* 6 *Gill & Johnson,* page 45, this Court said: "A trustee, in his character as such, may, for the benefit of those interested in the fund, and who are aggrieved by an erroneous order for its payment or distribution, appeal to this Court for redress." The Court was speaking of trustees appointed by decree in equity to sell real estate. The decision was apparently questioned in *Balch vs. Zentmeyer,* 11 *Gill & Johnson,* 267; and was much doubted in *Salmon vs. Pierson,* 8 *Md.,* 299. The division of the money in the hands of the trustee, by an order of Court was said by this Court in *State, use of Oyster vs. Annan,* 1 *Gill & Johnson,* 462, to be *res inter alios acta,* so far as the trustee was concerned. A receiver cannot appeal from an order of the Court which appointed him, and the reason given is that "he is the officer of the Court, and truly the hand of the Court." *Ellicott vs. Warford,* 4 *Md.,* 85. In this respect a trustee appointed to sell is in the same predicament. And he cer-

Lurman and Fowler, Trustees *vs.* Hubner.

tainly has not by virtue of his office any title to the property decreed to be sold, or any interest in it, or in the proceeds of sale.   He is not appointed to protect the rights of the different claimants to the money in his hands, or to represent them in any controversy.   His functions are prescribed and limited by the decree which appointed him.   The difference is very great between him and a conventional trustee, holding title and so far occupying the position of owner.   For these reasons we are unable to follow the decision on this point in *Ellicott vs. Ellicott*.   In the present case one of the trustees is a party in interest; the appeal is, however, made by both trustees in their official capacity.   In *Ellicott vs. Ellicott* both of the trustees were personally interested, but the decision did not rest on that ground nor was it at all considered in the opinion delivered.

Inasmuch as we sustain the title of the property sold to the exceptant we regret very much that we are obliged to dismiss this appeal.   If however, the parties choose to agree among themselves that the motion to dismiss shall be withdrawn, we will reverse the order of the Circuit Court, and will ratify the sale.

*Appeal dismissed.*

(Decided 4th February, 1892.)