(Decided March 26th, 1896).

---

## RICHARD WAREHIME AND JACOB P. BALTOZER, EXECUTORS AND OTHERS, *vs.* JOHN L. GRAF.

*Appeal by Executors and Others from Order Setting Aside a Sale Under a Will—Executors Sales Not Within the Statute of Frauds—Auction Sales—Acceptance of Bid.*

Executors directed by a will to sell certain property and hold part of the proceeds in trust are entitled to appeal from an order of the Orphans' Court setting aside a sale made and reported by them.

Legatees under the will who would be entitled to the proceeds of a sale made by the executors are also entitled to appeal from such order.

Public sales of land made by executors under a power in the will are not within the fourth section of the Statute of Frauds, but are to be regarded as judicial sales.

At an auction sale the property was first knocked down to A. at a certain price, whereupon another person claimed that the bid was his. The sellers then directed the property to be put up again, and it was again knocked down to A. at a higher price. *Held*, that since

Md.]                     Argument of Counsel.

A.'s first bid was not accepted there had been no complete sale then and that he was bound to take the property at his last bid.

*Held*, upon the facts, that a sale was made at auction to a person whose bid was made by nodding his head to the auctioneer.

Appeal from an order of the Orphans' Court of Carroll County setting aside a sale of land reported for confirmation by the appellants as executors. The order for the appeal was in their names as executors of Samuel Warehime, deceased; also in behalf of the children of said Richard Warehime, the son of George Warehime, a deceased brother of said testator in said will mentioned, being the legatees under the will of said Samuel Warehime, deceased, and also in behalf of George R. Warehime, the personal representative of George Warehime, under the will of said George Warehime, as mentioned in the will of said Samuel Warehime. The will of the testator gave: " To each of the children of my nephew, Richard Warehime (son of George Warehime), one hundred dollars, and the balance of my estate I bequeath to be equally divided among all my brothers and sisters, or their legal representatives ; to the legal representatives of my deceased brother, John Warehime, one portion ; to my brother, George Warehime, or his legal representatives, one portion ; to the legal representative of my deceased sister, Catherine Wentz, one portion ; and it is my will that the heirs of her deceased son, William, shall be included ; to the legal representatives of my deceased sister, Elizabeth Strevig, one portion ; to my deceased sister, Mary Hoffman's, legal representatives, one portion ; to my sister, Susan Downey, or her legal representatives, one portion."

The cause was argued before McSHERRY, C. J., BRYAN, FOWLER, BRISCOE, PAGE, ROBERTS, BOYD and RUSSUM, JJ.

*James A. C. Bond* for the appellants.

*Charles E. Fink* for the appellee.

PAGE, J., delivered the opinion of the Court.

Under a power in the will of Samuel Warehime, the appellants, executors, offered at public sale certain real estate, containing one hundred and fifty-eight acres, situate in Carroll County; and on the fifteenth day of August reported to the Orphans' Court that they had sold the same to John L. Graf at $35.75 per acre. The Court passed an order confirming the sale, unless cause to the contrary was shown before the ninth day of September. On the third, John L. Graf filed his petition, alleging that he was the purchaser of the property; not at the sum named in the report, but upon a bid of $31.75 an acre; and prayed the Court not to confirm the sale as reported, but to confirm it to him as the purchaser, at the price of his bid. Testimony was taken, and after a hearing, the Court ordered the sale to be set aside, and directed the executors to resell the property. From this order the executors have appealed.

The appellee moved to dismiss the proceedings in this Court upon two grounds, first, because the executors are not entitled to appeal; and second, because other persons, without showing a legal interest in the matter, not parties to the proceedings in the Orphans' Court, have joined in the appeal. It is doubtless true, that a trustee to sell appointed by the Court, cannot appeal from an order of the tribunal which appointed him; for the reason, that having no interest in the property, or in the proceeds of the sale, he is merely the officer and the hand of the Court. *Lurman* v. *Fowler*, 75 Md. 273. But this is not that case. Here the executors were appointed by the testator, and by the terms of the appointment, are charged with the duty, not only of selling the property, but also of seeing to it, that the proceeds of the sale shall be so applied as to carry out the purposes of the testator. Part of the money arising from the sale is to remain in their hands in permanent trust, and the residue they are to distribute to persons whom the testator particularly names. In the discharge of their trust

under this will it is, therefore, their duty to take such steps in this Court, as well as in the Court below, as will secure and protect the fund, so that the purposes of the testator shall be accomplished. If this be so, it should be permitted to them, to appeal to this Court from an order, which, in their judgment, unjustly prevents them from securing the full value of the property entrusted to their care. *Littig's Case,* 81 Md. 434 ; *Montgomery & Spencer* v. *Williamson,* 37 Md. 423.

In reference to the second ground, it is only necessary to say that the interest of the other parties to the appeal fully appears in the record ; and if they considered themselves aggrieved by the order of the Court, they had full right to appear in the case by the leave of the Court and prosecute their appeal.

We come now to consider the case upon its merits. The appellee contended in his brief and in argument, that the sale reported is within the fourth section of the Statute of Frauds, and for that reason cannot be enforced, there being no written contract. But we cannot support this contention. It is settled in Maryland that judicial sales are not within the statute, and we are of the opinion, that sales made by executors ought to be regarded under our statutes as judicial sales. By the 282d section of Article 93 of the Code, " in all cases " where an executor may be authorized and directed to sell the real estate of the testator, the executor is required to account to the Orphans' Court, and the sale is not valid unless ratified and confirmed by that Court, after notice by publication as practised in Courts of Equity. His bond is made answerable for the proceeds of sale, and the Court may allow him a commission of not less than two nor more than ten per cent. In case the purchaser has transferred his purchase to another person, the Court may substitute the assignee for the original purchaser, provided it can be done without injury to the estate, and may direct the executor to convey accordingly. By the 283d section, if the executor named in the will decline or

refuse to act, the Orphans' Court has power to appoint an administrator with the will annexed, and empower him to execute the trusts in the will, to the same extent as the executors could do. And by section 284, where the purchaser fails, neglects or refuses to comply with the terms of sale, the Orphans' Court has power, on proper proceedings, to order a resale at purchaser's risk. Sales made by executors, by these provisions, are placed under the superintendence of the Orphans' Court (unless a Court of Equity has assumed jurisdiction) and are governed by the same rules as those which control a trustee appointed by decree; and under these circumstances, such sales are not within the Statute of Frauds. In *Warfield* v. *Dorsey*, 39 Md. 303 (*et seq.*) this Court, after holding that the Statute of Frauds does not apply to judicial sales, declared the rule to be applicable to sales made under authority contained in a mortgage. In concluding the opinion, the Court say: " There can be no doubt that sales of this description were intended by the provision of the Code, to be under the superintendence of the Court, and governed by the same rules as those made by a trustee appointed by a decree of the Court. In regard to them, the Court acts for all the parties interested, and who are entitled to interfere; they are incomplete until ratified by the Court, and there is no reason why the Statute of Frauds should apply to them more than the others." These observations apply to the case at bar, and we think are decisive of the point.

It appears from the evidence that the property was first offered in separate parcels. It was then put up as an entirety. The auctioneer knocked it down at $31.75 to John L. Graf; but a certain Frederick E. Graf claimed the bid. The auctioneer immediately reported the dispute to the executors and asked for directions. The executors ordered him to put it up again. Whereupon be announced in a loud tone that "there was a dispute between the bids and the property would be resold by order of the executors." In other words, the executors refused to accept the bid, and

directed the sale to continue.   Under all the circumstances, this was a prudent and reasonable course for them to pursue.   The bid was claimed by two persons.   Unless settled on the spot, the controversy might portend litigation and a long delay, to the great detriment of the estate.   A trustee is not bound to accept every bid.   He is clothed with a prudent and sound discretion.   *Gray* v. *Veirs*, 33 Md. 18.   John L. Graf states he did not hear the announcement, though he was but a few steps distant.   But he did hear the auctioneer " commence again crying on the property," and yet he made no protest to the continuance of the sale, and during its progress set up no pretention that he was already the purchaser.   In view of these facts, it is plain he cannot now be permitted to claim the property at $31.75 per acre.   Must he be required to take the property at $35.75 per acre, the sum at which it was finally struck off?   This is a question of fact to be determined by the preponderance of evidence.   He testifies that when the property was reoffered he put no bid upon it, " either by word of mouth or by nodding his head, or by any other manner."   Mr. Hunt, who was called to corroborate this statement, testifies only that he and Graf were about twenty steps distant from the auctioneer, and that he never *saw* the appellant make any bid in any manner; but he furnishes us with no facts or circumstances from which it can be inferred that if a bid had been made by a nod of the head he would have seen or known it.   On the other hand, all the witnesses agree that during the second offering there were alternate bids of twenty-five cents additional, until the sum of $33.75 was reached.   The auctioneer swears that the bidding was between Fred. Graf and John L. Graf, and that the last and highest bid was John's ; that, with a single exception, John made all his bids by nodding his head—a method of bidding used by purchasers generally for many years.   As to the main facts of his statement, the auctioneer is sustained by two other witnesses, who are in nowise impeached.   Nor does it appear that after the sale the appellee in any manner

questioned the statement made by the auctioneer, that his was the last and best bid.   According to his own statement, he contented himself with saying to the auctioneer that he was " ready to comply at $31.75," and it does not appear that he denied the bid of $35.75 until after the executors' report was filed.   In view of these facts, the testimony of Mr. Baltozer is significant.   That gentleman testifies that after the sale Graf said "he was ready to give his obligations at the price it was knocked down the first time," and the witness replied, " No, sir ;   *   *   *   we can't take less than $35.75, at which it was knocked down, as we would make ourselves responsible for the difference." Without extending this opinion in the discussion of the facts, we are of opinion, after a careful examination of the record, that the weight of evidence sustains the contention of the appellants.   The appellee should be required to accept the property at the price of $35.75 per acre.

*Order reversed and cause remanded.*

(Decided March 25th, 1896.)