## J. SHORB NEALE *vs.* GEORGE V. PEVERLEY ET AL.

*Trustees' Sale Vacated—Lower Bid Accepted After Offer of Higher Price.*

A decree of a Court of Equity authorized trustees to sell certain real estate at either public or private sale. The property was first offered at auction, and was withdrawn when the highest bid was $1,700. Afterwards negotiations for a purchase were begun by the appellee, who offered $1,500. The trustees wrote that they would accept that offer upon the receipt of a certain deposit. Before a deposit was made and before a definite agreement to sell to the appellee, the trustees received the offer of a higher price for the land from a responsible bidder. Afterwards the appellee paid the deposit and the trustees reported a sale to him for ratification. Upon exceptions thereto by a person interested in the proceeds, *held,* that since the sale reported was made by the acceptance of a lower bid in preference to a higher offered prior thereto, the sale should be vacated.

*Decided December 2nd, 1910.*

Appeal from the Circuit Court for St. Mary's County (CAMALIER, J.).

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Charles S. Hayden* (with whom were *Lemmon & Clotworthy* on the brief), for the appellant.

*Combs & Loker,* for the appellee, submitted the cause on their brief.

URNER, J., delivered the opinion of the Court.

This appeal is from an order of the Circuit Court for St. Mary's County overruling exceptions to a sale of real estate made by trustees under a decree of that Court and finally ratifying the sale as reported. The decree authorized the property to be disposed of at either public or private sale, and it was sold according to the latter method after two efforts to sell at public auction. As originally passed the decree appointed John F. Harris as sole trustee to make the sale, but upon his petition, stating his need of assistance because of ill-health, a supplemental decree was signed associating with him David S. Briscoe as co-trustee. It appears from the record that Mr. Briscoe conducted the negotiations which resulted in the sale eventually reported to the Court. The exceptions were filed by the appellant, J. Shorb Neale, a party interested in the cause and the proceeds of sale, and by William Riggs MacGill, who had made an offer to purchase which was declined. Mr. Neale's objections were based upon the ground that the property had been sold for an inadequate price and for less than could be obtained, and Mr. MacGill excepted because, as he alleged in a detailed narrative of his negotiations, he had, prior to the sale to the reported purchaser, George V. Peverley, made offers to the acting trustee to buy the property at a higher price. The latter exceptions were overruled by the Court below upon the theory that an unsuccessful bidder has no standing to question a sale of this character, while the former were held to be untenable because the conclusion was reached that the sale reported was properly consummated by the trustee and that there were no circumstances justifying its rejection.

The real estate in question, consisting of a farm of about three hundred acres, known as "Keech's Rest," when first offered at public sale under the decree was withdrawn at a bid of seventeen hundred dollars. When the second attempt was made to sell it in this way there were no bids re-

ceived.   Subsequently, about the last of November, 1908,
both Mr. MacGill and Mr. Peverley opened communications
with Mr. Briscoe in reference to the purchase of the prop-
erty.   On December 17th, the trustee wrote Mr. Peverley
that, in pursuance of their oral agreement that he wait ten
days or two weeks for an offer on the farm, he had delayed
answering another party who had inquired as to the price,
and that he would be glad to have a proposition at once if
there was to be one submitted.   Two days later he wrote
Mr. MacGill acknowledging his inquiry of November 28th
and stating: "This property is in my hands as trustee and
the price is to be determined by the Circuit Court for St.
Mary's County; whatever price I might name, therefore,
would not be conclusive; but any price offered, worthy of
consideration, will be reported for approval or rejection.   At
a public offer of the property by a former trustee $1,700 was
refused.   If you want the property, it is for sale, and if you
will make an offer for it within reasonable figures, action in
the matter will not be delayed, and you will be answered
promptly."   On December 18th Mr. Peverley wrote the
trustee: "I can offer you $1,500 for 'Keech's Rest.'  If my
price is acceptable, please advise in the near future."   To
this a reply was sent by Mr. Briscoe under date of January
4th stating that he had conferred with his co-trustee and
their conclusion was to accept the offer subject to the ap-
proval of the Court, and adding "Acceptance means a de-
posit of $200 and report of the offer and of the deposit and
petition for ratification of sale."   Without performing the
condition as to the deposit Mr. Peverley wrote Mr. Briscoe
on January 6th as follows: "I am in receipt of your favor
of the 4th inst. with reference to my offer of the 18th ult.
for Keech's Rest; I had almost given the matter up, but will
go into the details; you will hear from me within a few
days; will you kindly in the meantime send me the details
in regard to boundaries, etc."   With this request Mr. Briscoe

immediately complied by sending on memoranda of the
deeds from which the necessary data could be obtained.   On
January 20th John W. Brown, acting for Mr. MacGill, but
not then disclosing his principal, offered the trustee $1,600
for the property, and on the following day the latter wrote
Mr. Peverley: "Your letter of the 6th inst., *in re* Keech's
Rest, advised I would hear from you within a few days.
Yesterday I received another and a better offer for this prop-
erty, which remains unanswered because of the proposition
of sale and purchase pending between us.   I am writing,
therefore, to inquire your conclusion in the matter."   This
letter was answered the same day by Mr. Peverley who
stated that he was "hunting up title, lines, etc., of Keech's
Rest;" that he had been unable to go down to the property,
but expected to do so the following week; and that "of
course if everything is straight, I must perform my part of
the bargain."   This did not prove to be satisfactory to the
trustee, for he replied on January 25th as follows: "Your
letter of the 22nd inst. duly received.   I understand from
this letter and the preceding letters that your offer for
'Keech's Rest' is in good faith and your intention is to buy
the land.   As the matter stands, however, there is no defi-
nite contract to buy.   My letter to you of the 4th of Janu-
ary, inst., expressed the terms of sale, sufficiently, if agreed
to, to secure the sale of the property to you, viz., 'a deposit
of $200.'   My letter of the 21st inst. stated its object, and
the reason for it.   Nevertheless your letter of the 21st inst.
ignores a contract, leaving the matter undertermined."   The
writer then proceeded to state that in the meantime another
party was offering more for the land and urging acceptance
by tendering a deposit; that his action was subject to criti-
cism in refusing to accept a larger offer; but that he was
willing to suffer this because of his disposition to deal fairly
with Mr. Peverley, provided the latter's offer were made a
complete contract by the deposit of $200 in compliance with

the prescribed condition. On the succeeding day the offer of $1,600 was renewed by Mr. Brown and Mr. W. E. Sherwood, with the explanation that it was made on behalf of Mr. MacGill; and on the same day a deposit of $200 was received and accepted from Mr. Peverley. While the trustee was preparing the report of sale on January 27th, Messrs. Brown and Sherwood returned and offered $1,750 as Mr. MacGill's representatives. This offer was declined, and the sale was reported to the Court as having been made to Mr. Peverley for $1,500. Mr. MacGill's offer was later increased to $2,000, and in his testimony he expressed his willingness to give $2,200 for the property if anyone else should bid $2,100.

The correspondence and evidence in the record establish the fact that the trustee was offered $1,600 for the farm before he consummated the contract for its sale at $1,500. While he may not have previously known that the larger amount was proposed on behalf of Mr. MacGill, it was nevertheless offered by one whose responsibility was not questioned and at a time when the trustee understood that he had entered into "no definite contract" to sell the land to Mr. Peverley. This understanding, we think, was entirely correct under the circumstances. Not only had Mr. Peverley's letter of January 4th, stating that the trustee would hear from him within a few days, left the matter so "undetermined" as to induce further inquiry as to his conclusion after the larger bid had been received, but the deposit stipulated as a pre-requisite to the purchase had not been made although more than two weeks had elapsed since this had been prescribed as a condition of the acceptance of the offer. It could not have been supposed that the deposit might be indefinitely delayed and the purchase yet be effective. Even if the trustee had so intended, he could not have allowed the prospective purchaser to consult his own convenience as to the time for making the deposit without disregarding the

terms of the decree which provide, in the case of either public or private sale of the property, for the payment of "one-third of the purchase money in cash on the day of sale." There is no question as to the good faith of the trustee in the negotiations and as to the sincerity of his belief that he ought to permit Mr. Peverley to complete the purchase notwithstanding the pendency of "another and a better offer." The inquiry, however, to be dealt with by the Court is not whether the motives of the trustee were proper, or whether the sale was made for such a grossly inadequate price as to justify its rescission, but whether, against the objections of a party interested in the proceeds, the acceptance of the lower in preference to the higher responsible bid should be approved. The simple question is whether the Court, having due regard to the interests of the parties, should ratify a sale made in disregard of a more advantageous offer than the one reported. This question can be answered only in the negative.

It is a familiar principle that the Court is the vendor and the trustee is merely its agent. Until the sale has been ratified a transaction of this nature amounts only to an offer to purchase. It is the primary concern of the Court to dispose of the property under its control for the best price reasonably available. *Schindel* v. *Keedy,* 43 Md. 413; *Warfield* v. *Dorsey,* 39 Md. 299; *South Balto. Co.* v. *Kirby,* 89 Md. 64; *Lurman* v. *Hubner,* 75 Md. 273; *Callaway* v. *Hubner,* 99 Md. 534; *Horsey* v. *Hough,* 38 Md. 139; *Miller's Equity Procedure,* 566. It is far better, as this Court has said, that the purchaser should lose the benefits of a good bargain than that the parties in interest should suffer loss by the improvident terms on which the property may have been sold. *DeFord* v. *McWatty,* 82 Md. 178. The Court should not ratify a sale made by the trustee in misapprehension of his duty where loss results to those entitled to the proceeds. *Horsey* v. *Hough, supra.*

Here a property for which $1,700 had been refused at public sale was sold at private sale for $1,500 in the face of a pending responsible bid of $1,600. If this sale had been made at public auction it would not be suggested that an acceptance of the lower offer should be ratified by the Court. There is no reason why a private sale should not also be accorded the advantages of legitimate and seasonable competition.

The Court below was of the opinion that a complete and valid contract had been entered into between the trustee and Mr. Peverley before the higher price was offered; but in this view we are unable to concur.

As the controlling question in the case is presented by the exceptions of Mr. Neale, who is conceded to be a party in interest, and as he is the only appellant, it will not be necessary for us to consider the point as to Mr. MacGill's right, as a bidder whose offer was declined, to file exceptions to the sale.

The order of ratification will be reversed and the cause remanded to the end that the property may be again offered for sale by the trustee; but in view of the good faith of all parties concerned the costs will be directed to be paid out of the proceeds of sale.

> *Order reversed and cause remanded, the costs above and below to be paid out of the proceeds of the real estate decreed to be sold.*