J. STANISLAUS COOK *v.* SAFE DEPOSIT & TRUST COMPANY, EXECUTOR, ET AL.
[No. 10, April Term, 1937.]

*Decided April 22nd, 1937.*

The cause was argued before BOND, C. J., URNER, OFFUTT, PARKE, SLOAN, MITCHELL, SHEHAN, and JOHNSON, JJ.

*Charles F. Stein* and *Charles F. Stein, Jr.*, for the appellant.

*Charles G. Page*, with whom was *George M. White* on the brief, for the Safe Deposit & Trust Company, appellee.

*Thomas M. Jenifer*, with whom were *Jenifer & Jenifer* on the brief, for S. Lawrence Hammerman, appellee.

SLOAN, J., delivered the opinion of the Court.

This appeal is from an order of the Orphans' Court of Baltimore County dismissing a petition of J. Stanislaus Cook, appellant, which prayed an order requiring the Safe Deposit & Trust Company of Baltimore, executor under the will of Fannie R. James, deceased, to report the sale of certain real estate of the decedent to him, and to treat the petition as an exception to the sale of the same property, which had been reported by the executor as sold to S. Lawrence Hammerman.

Mrs. Fannie R. James, of Baltimore County, died in April, 1936, leaving a will, admitted to probate by the Orphans' Court of Baltimore County, whereby she appointed the Safe Deposit & Trust Company of Baltimore executor, with power and direction to sell all her real estate. There were three codicils, but none of them affect the authority of the executor with respect to the sale of the real estate.

On November 5th, 1936, the executor filed a report in the Orphans' Court of Baltimore County that it had sold three tracts or parcels of land belonging to the estate of Fannie R. James, at private sale, to S. Lawrence Hammerman, for $23,000. The parcels of land consisted of 16.06 acres fronting 575 feet on the south side of the Frederick Road in Baltimore County, and two detached tracts, together containing about one acre. The report stated that the sale was made through A. J. Watkins, a real estate broker, at the usual real estate broker's commission. The same day an order *nisi* was passed and the same published, all as required by law. Code, art. 93, sec. 299.

J. Stanislaus Cook, the appellant, on November 24th, 1936, filed in the Orphans' Court a petition wherein he stated that he, on October 27th, 1936, had bought the same property from the executor for $20,100, that it was, up to that time, the highest offer made for the property, and the bid was accepted by the executor, and prayed the Orphans' Court to pass an order requiring the executor to report the sale to him at $20,100, and also prayed that the petition be taken as exceptions to the sale. Thereupon an order was passed directing the executor to report the sale to J. Stanislaus Cook, unless cause to the contrary be shown. Answers were filed by the executor, S. Lawrence Hammerman, and four beneficiaries under the will.

By letter dated May 27th, 1936, the executor, through William E. Harris, circularized the real estate brokers in and about Baltimore with an offer to sell the property here involved at the sum of $30,000, concluding with an offer, if a satisfactory purchaser be produced, to "pay the usual full real estate broker's commission." *McLean v. Peyser*, 169 Md. 1, 9, 179 A. 58. Amongst those so addressed were Mohler Brothers of Catonsville. No offers were made at or near the price named, and, in a few months, it was rumored in real estate circles that the beneficiaries of the will would sell for $18,000. On October 23rd, 1936, Mr. Cook, through Donald I. Mohler, one of the brokers solicited, submitted an offer to buy at $19,000. Shortly before Mr. Hammerman had made an offer of $18,000, which was increased on October 27th, 1936, at 2 o'clock p. m. to $19,000. Mr. Mohler, a broker named Falladi, and Arthur J. Watkins, representing Mr. Hammerman, were present at the executor's office, and it was then suggested by Mr. Harris that they return at 4 o'clock, and submit their best offers. He said, however, at the time that he would then and there accept a bid of $20,000. Shortly before 4 o'clock the three brokers appeared, and Mr. Watkins made an offer of $19,500, Mr. Falladi $20,000, and Mr. Mohler $20,100, the last named being in the form of a letter to him from Mr.

Cook. It had been stated in advance of this meeting that the purchaser would be required to deposit ten per cent. of the purchase money, and pay the balance on ratification of the sale. After these offers, Mr. Harris testified, "I took Mr. Mohler down to Mr. Opie, the trust officer in charge of the estate, and told him the situation and we agreed that we would make the sale subject to the approval of the court," the procedure required by Code, art. 93, sec. 299. Mr. Opie testified, "I can't tell exactly what I said' to him (Mr. Harris), but the general effect of it was I said, "Go ahead, meaning to go ahead and sell it." Mr. Harris testified that then "I turned him over to the gentleman who assists me in these matters (a Mr. Smith) and we took him back up stairs and the gentleman who draws these contracts for us was not in and it was decided we would draw the contracts at the first opportunity and submit them to him." No deposit was made at the time, but Mr. Mohler offered to put up a savings bank book with more than $2,000 credit on it. He was told to wait until the contract was signed, which Mr. Mohler testified Mr. Harris said would be about Friday of the week. On October 30th, 1936, Mr. Cook mailed to the executor a check for $2,000 on account of his purchase, which was returned because in the meantime, October 29th, 1936, the Prudential Co-operative Realty Co., Inc., by S. L. Hammerman, its president, wrote one of the beneficiaries under the will authorizing him "to offer to the heirs of the Fannie R. James Estate" $22,500. This resulted in the executor reopening the sale, and notifying all those who had been interested in the purchase of the property that it would receive offers up to noon on November 5th, 1936, and inclosed with its letter a draft of contract of sale which bidders were requested to sign and enclose with their bids along with certified checks for ten per cent. of their respective bids. Mr. Hammerman responded with a bid for $23,000, which was accepted and reported to the Orphans' Court. Mr. Cook notified the executor that he stood on his rights as an accepted bidder.

The question is not one between the bidders, as the appellee, Hammerman, has no standing in this case, and no interest unless the appellant, Cook, is declared not to have been accepted as a bidder for the property. An unsuccessful bidder, unless otherwise interested, cannot be heard on exceptions to a sale. *Boccuti v. Spitznagle,* 166 Md. 542, 543, 171 A. 35. As between the executor and the appellant, the test is that if the bidder can be held to his bargain, then the seller, executor, is also bound. It has long been the law in this state that the statute of frauds has no application to chancery sales (*Warfield v. Dorsey,* 39 Md. 299, 17), and the same rule is held to apply to executors appointed to sell real estate (*Warehime v. Graf,* 83 Md. 98, 34 A. 364). The same procedure shall be had with regard to the report and ratification of sales as in cases of sales of land under decrees in equity. Code, art 93, sec. 299. The power of the orphans' court ends, however, with the ratification of the sale, as it has no power to enforce its order, but the executor can resort to chancery for specific performance or recission. *Carter v. Van Bokkelen,* 73 Md. 175, 20 A. 781. It is not necessary, in order that the purchaser be bound by his purchase, that he pay or secure the purchase money or execute a contract in advance. When the sale is reported and ratified the obligation is complete, and if he does not pay voluntarily, he may be proceeded against in a summary way for payment, or performance, or the property resold at his risk. *Andrews v. Scotton,* 2 Bland, 629; *Anderson v. Foulke,* 2 H. & G. 346, 370; *Warfield v. Dorsey,* 39 Md. 299.

The only question, then, is whether there was a binding contract of sale between the executor and the appellant. The appellees' contention is that the bid of the appellant was only an offer, which had no binding effect on either until reported and ratified, and they cite several authorities to this effect, with all of which we agree, except that, when the executor accepts the offer, it was then its duty to report the sale, with the right before the day named in the order *nisi* to any party interested

to except. Once having accepted a bid, the executor or trustee cannot reopen the sale to let in disappointed or rival bidders. They are right about an accepted bid being an offer, but the seller is bound to report such a bid, and on ratification it becomes an enforceable contract. As said in *Whitely v. Whitely,* 117 Md. 538, 544, 84 A. 68, 71, "The court should [not] * * * depart from the policy of encouraging purchasers at judicial sales by sustaining those fairly made in all respects, and for a full price, whether at public sale, or that failing, at private sale, and by refusing to strip a purchaser of a right fairly acquired, for a full consideration, merely because one who has had his day for free competition demands that he be given a second opportunity." *Loft, Inc., v. Seymer,* 148 Md. 638, 645, 646, 129 A. 911; *Andrews v. Scotton,* 2 Bland, 629, 644. And in the recent case of *Blank v. Frey,* 165 Md. 647, 650, 170 A. 156, 157, this court said, "when a property has been fairly brought to its market, such as the market is at the time, the subsequent possibilities of obtaining a higher price do not alone furnish sufficient ground for setting aside the sale made."

The executor's reliance is upon two decisions of this court—*Neale v. Peverley,* 114 Md. 198, 78 A. 1102, and *Warehime v. Graf,* 83 Md. 98, 34 A. 364, 366, the facts of which do not parallel those of this case, so as to make them precedents here. In *Neale v. Peverley, supra,* property had been offered at public sale and withdrawn on a bid of $1,700. Subsequently negotiations were opened with a prospective purchaser who offered $1,500, and who was written by the trustees that "Acceptance means a deposit of $200 and report of the offer and of the deposit and petition for ratification of the sale." The purchaser delayed compliance a few weeks, and in the meantime a higher offer was made, and on the day of the report of the first offer one still higher. This court held that a complete and valid contract had not been entered into when the higher price was offered. Peverley's acceptance by the trustees was conditioned on his making the required deposit. In this case the purchaser, Cook,

was accepted, and the deposit postponed by the executor. In *Warehime v. Graf, supra,* the executors of Samuel Warehime offered 158 acres of land at public auction. The auctioneer knocked down the property to John L. Graf at $31.75, and Frederick E. Graf then and there claimed the bid as his. The auctioneer reported the dispute to the executors, and they ordered a resale at once, and the auctioneer again cried the sale. The bidding was then between Frederick Graf and John L. Graf, going to $35.75, at which price the auctioneer knocked down the property to John L. Graf, to whom it had been announced as sold at $31.75. The sale was reported to John L. Graf, who excepted to the report on the ground that he was an accepted bidder at $31.75. This court said, "Under all the circumstances, this [the resale] was a prudent and reasonable course for them to pursue. The bid was claimed by two persons. Unless settled on the spot, the controversy might portend litigation, and a long delay, to the great detriment of the estate. A trustee is not bound to accept every bid. He is clothed with a prudent and sound discretion," but the chancellor had held, and this court affirmed him, that the fact was that John L. Graf, the original bidder, had also bid on the resale $35.75, and he had, therefore, waived any rights he might have had as the original successful bidder.

If the executor had promptly reported the sale to Mr. Cook, the fairness of which is not questioned, and one of the beneficiaries had excepted, we would have substantially the question now presented, in reverse. Such a "sale will not be set aside unless there exists an inadequacy of price that, under the circumstances, is directly attributable to some failure of reasonable diligence or effort in the making of the sale." *Kramme v. Mewshaw,* 147 Md. 535, 548, 128 A. 468, 473. Disappointed bidders, after a sale is closed, do not determine the price at which property will be sold, for the sale frequently, as in this case, enhances the value of property, and adds to its attractiveness. Mr. Hammerman thought more of the property after it was knocked down to Mr. Cook than he

did before.   If this is not true, then his last offer ought to have been his first.   The exceptions to the report of sale in this case should have been sustained, and the sale reported to the appellant.

> *Order reversed, with costs, and case re-manded for further proceedings in accord with this opinion.*