# J. HOLMES WHITELY *vs.* BENJAMIN WHITELY, TRUSTEES, ET ALS.

*Judicial sales: no sale before ratification.   Purchaser's right: duty of Court to uphold; purchase by married woman; trustee's right to purchase.*

Judicial sales, whether public or private, reported by trustees under decrees of courts of equity, are subject to the approval of the Court, and, until ratified, any such sale is only an offer to purchase.                                                p. 545

Courts should encourage purchasers at judicial sales by sustaining them when fair in all respects and for a full consideration, whether at public or private sale.  Courts should not strip a purchaser of a right, fairly acquired and for full consideration, merely because one who had had his day for free competition, demands that he be given a second opportunity.
p. 545

Even apart from Chapter 457 of the Acts of 1898 (Code, Art. 45, sec. 5), a married woman is a competent purchaser at a judicial sale, and upon her failure to comply with the terms of the sale the property may be resold at her risk, and she be made personally liable for any deficiency.          p. 546

A trustee for one of the parties in interest is a competent purchaser at his own sale in proceedings for the sale or partition of the land.                                        p. 546

The exceptions of a party to the ratification of a sale will not be considered on appeal when that party has not taken an appeal from the order of ratification.            p. 540

*Decided February 29th, 1912.*

Appeal from the Circuit Court No. 2 of Baltimore City (DAWKINS, J.).

Submitted to BOYD, C. J., BRISCOE, PEARCE, BURKE, THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*John E. Semmes, Jr., Jesse N. Bowen* and *John E. Semmes* filed a brief for the appellant.

*E. P. Keech, Jr.,* filed a brief for the appellees.

PEARCE, J., delivered the opinion of the Court.

This is an appeal from an order of the Circuit Court No. 2 of Baltimore City overruling exceptions filed by the appellant to the ratification of a sale reported by the trustees, and finally ratifying said sale. The sale was made under a decree passed in a cause wherein the appellant was the sole plaintiff and Benjamin Whiteley, trustee, et al., were defendants. A copy of the decree is embraced in the record, but no copy of the bill appears. It is, however, inferable from the testimony that the object of the suit was the sale for partition of a parcel of land in Baltimore City owned in common by the original parties to the cause, and it is so stated in the appellant's brief. There was a mortgage for $18,000.00 held by Gen. Lawrason Riggs, trustee, upon a portion of this property and in order to effect a favorable sale he was made a party to the cause. The decree recites that it was passed "upon consent of the parties," and at the foot of the decree there is a written assent of the appellants' then solicitor, Mr. Wm. S. Bryan, Jr. The decree directs that the property be sold free and clear of the lien of the mortgage, and that the lien should at once attach to the purchase money, and Wm. S. Bryan, Archibald H. Taylor and Lawrason Riggs were appointed trustees to make said sale. They were expressly authorized "to offer and sell the property as a whole," and provision was made in case of the purchase of the property by any of the parties entitled to the proceeds, and the confirmation of such purchase, that a distribution account should be made and the purchaser should not be required to pay the dividend awarded to him in such account.

The decree was passed March 10th, 1910, and was amended October 1st, 1910, so as to require the sale to be

made subject to the operation of certain condemnation proceedings for opening a street through the property, the purchaser to receive the damages which had been awarded to the owners and to pay all benefits assessed on the property.

The trustees carefully complied with all the requirements of the decree, and their advertisement contained a minute description of the property, setting forth certain beneficial restrictions as to the use of certain portions of the property, which had been imposed thereon—and stating definitely, the amount of damages and benefits to be received, and assumed, by the purchaser under the condemnation proceedings mentioned.

The report of the trustees filed March 21st, 1911, shows that on November the 5th, 1910, they offered the property at public sale at the Real Estate Exchange Sales Rooms in Baltimore City; that the highest bid then received was thirty thousand dollars, and that being deemed inadequate no sale was then made. The report stated "that they have since deligently tried to obtain a higher price for the said property, and that they have since obtained a higher offer, and *have sold the same at private sale* to Emily Stone Whiteley, of Baltimore City, for thirty-seven thousand five hundred dollars, that being the highest offer they could obtain after communicating with all the parties in interest, who have expressed themselves as satisfied that the same should be accepted," the terms of the sale being those prescribed by the decree, and a deposit of five hundred dollars being made by the purchaser. On March 27th, 1911, Stockett M. Whiteley, one of the parties in interest, filed sundry exceptions to the ratification of this sale, among which were—that no private sale could be made under the decree; that the property should have been offered in parcels as well as in entirety, and that if so offered he believed a better sale could be made; and that the property was susceptible of partition in kind. As he has not appealed, however, from the order of ratification, his exceptions need not be considered.

On April 21st, 1910, the day the order *nisi* expired, the appellant filed his exceptions, the only ground being that he had that day filed with the trustees his bid for $38,500.00, accompanied by his certified check for $500 on account, and on September 27th, 1911, he filed an additional exception —on the ground that the reported purchaser, Emily Stone Whiteley is the wife of James Gustavus Whiteley, a party to the cause, who with Benjamin Whiteley, holds an undivided one-third interest in the property as trustees under the will of Elizabeth E. Whiteley, deceased, and that a purchase by Emily Stone Whiteley would in fact be a purchase made by James Gustavus Whiteley of an interest held by him as trustee.

Testimony was taken in open Court before Judge Dawkins, in behalf of the exceptant, the only witnesses being Gen. Riggs and Mr. Bryan—two of the trustees and the exceptant himself. Gen. Riggs was examined at length—he testified that at the public offer there were but two bids, one of $20,000 by Mr. McColgan and one of $30,000 by the appellant, and that the property was then withdrawn; that they then communicated with brokers in the effort to secure purchasers, and that the trustees agreed among themselves that they would try among the interested parties what they would give, informing each of them fully of any bids made by anyone of those parties, and that this course was faithfully pursued; that there was absolute publicity among all the parties in interest, and every bid was communicated to each one.

The first bid received after the public offers was on January 17th, 1911, of $30,000 from the appellant (being the same amount bid at the public offer) with an offer to make a deposit of $500. The second bid was on February 14th, 1911, from Emily Stone Whiteley of $32,500 accompanied by her certified check for $500. The third bid was on February 21st from the appellant, of $35,000 made by a letter stating that he understood his previous bid had been raised by one from another person offering $32,500 and that if it

was a *bona fide* bid he wished to increase his own bid to $35,000. The fourth bid was February 23rd, 1911, of $37,500 from Emily Stone Whiteley—also accompanied by her certified check for $500 and the last bid, made April 21st, 1911, thirty days after the report of sale was made, was $38,500 from the appellant stating that the $500 check previously sent, might be held as a deposit on that bid.

On March 14th, 1911, the appellants counsel, Mr. Bowen, wrote Gen. Riggs that the appellant did not desire to increase his bid, and that he Mr. Bowen therefore suggested the bid of $37,500 be reported to the Court. Gen. Riggs testified that Mr. Baldwin who represented Stockett M. Whitely, told him his client was satisfied, and Mr. Baldwin stated this was correct. Gen. Riggs also testified that the appellant desired the trustees to report his bid of $30,0000 at the public sale, and said he thought he was entitled to demand this.

The appellant very frankly admitted that he believed the account given by Gen. Riggs in regard to the various bids was correct—but said the language of the report, "that all the parties were satisfied" was not correct as to him, although he admitted that he authorized Mr. Bowen to communicate to Gen. Riggs that he did not desire to increase his bid, and that he had desired the trustees to report his bid at the public offering. He said "he did not regard that bid of $37,500 as final; that he wished the trustees to see what else they could do, and that when they declared the best they could do he expected to have an opportunity to come in and make a better bid if he felt like it; * * * and that he did not think Mrs. Whiteley's bid was a proper bid, and thought it could not be used against him; and that he thought her bids were made to run the property up on him and make him pay more than it was worth."

Mr. Bryan, as one of the trustees offered himself ready and willing to answer any questions that any one desired to ask in reference to the sale, but there was no response to his offer.

The first exception is based solely upon the fact that the exceptant himself the day before the expiration of the order *nisi* submitted to the trustees a bid of $38,500 being $1,000 above that which they had received sixty days previously from the reported purchaser, and this fact, the exceptant contends, requires that the sale reported should be set aside, *because it was a private sale, while the decree provided for a public sale only.*

It must be borne in mind in considering this exception, not only there has been produced no evidence of fraud, misrepresentation, mistake or surprise, but that the exceptant admits that there was in fact none. He admitted that Gen. Riggs' account, given on the stand, of the conduct of the trustees throughout was correct. His own language was: "I wished the trustees to go and see what else they could do, and when they declared the best they could do, I expected to have an opportunity to come in, and make a better bid if I felt like it. * * * I did not feel this bid was final." But Gen. Riggs conversation with Mr. Bowen, the exceptants counsel, just preceding Mr. Bowen's letter to him of March 14th, 1911, was notice to the exceptant that they had already done their best, and that Mrs. Whiteley's bid was final unless it was advanced by the exceptant, and Mr. Bowen's reply to Gen. Riggs which the exceptant testified he authorized him to make, was notice to the trustees that he accepted that bid as final. There was no element of *mistake in fact*—or of surprise, in that situation. His *"thought"* that he could notwithstanding, "come in again with a better bid if he felt like it, was at best but a mistake of law into which he would not have fallen if he had disclosed his thought to his counsel. His *"feeling"* that Mrs. Whiteley's bid could not be used against him, and was therefore not final, was an error of the same character, and is not in any sense an element to be considered in confirming or rejecting this sale. When the trustees reported Mrs. Whiteley's offer and their acceptance of it, to the Court for its ratification they thereby again declared they had done the best they could do. Both the trustees and the exceptant acted with deliberation and fin-

ality, excluding surprise or mistake; and as to inadequacy of price, the exceptant testified that his desire for the property was a sentimental one, because it had been his father's home; that it had depreciated and was bid beyond its value by Mrs. Whiteley, and that when he made his last bid of $38,500 "he determined he would just pay more than it was worth, and get it and be done with it."

Both public and private sales reported by trustees under decrees of Court are subject to the approval of the Court, and, until ratified, any sale is only an offer to purchase. The appellant cites *Latrobe* v. *Herbert,* 3 Md. Ch. 375, to the effect "that objections to the ratification of a sale made in contravention of the terms of the dcree will be allowed to prevail, which would be disregarded if urged against a sale made in conformity with the decree," and "that perhaps no deviation could render a sale more obnoxious to objection than selling at private sale when the decree directs a public sale." In that case the sale was set aside, but for the reason as stated by the chancellor: "That it was a private sale *resulting from misapprehension between the trustee and the party with whom he advised and consulted, and because I am satisfied a better price could then, and can now be had for the property."* Here there was no misapprehension between the trustee and this exceptant or anyone else, and there is positive evidence here that neither the exceptant or anyone else would *then* give a better price. In *Latrobe* v. *Herbert,* there were infant parties in interest, and there was evidence of inadequacy of price. Here all the parties are adults and there is the evidence of the exceptant himself, that the property brought more than it is worth, and that his belated bid is the result of a sentiment. Can it be doubted that if Mrs. Whiteley's bid had been made and accepted at a public offering, that the Court would, upon the evidence in this case, have overruled the exception and ratified the sale? We think not; and if this exception would not then have prevailed, we can perceive no reason why it should now prevail. The Court should no more in this case, than in that supposed, depart from the policy of encourag-

ing purchasers at judicial sales by sustaining those fairly
made in all respects, and for a full price, whether at public
sale, or that failing, at private sale, and by refusing to strip
a purchaser of a right fairly acquired, for a full considera-
tion, merely because one who has had his day for free com-
petition, demands that he be given a second opportunity.

In *Andrews* v. *Scotten,* 2 Bland, 644, the Chancellor said:
"In this State there has been no instance of opening the
biddings or suspending the sale merely to let in another and
a higher bid, and for no other cause," and in *Cohen* v. *Wag-
ner,* 6 Gill, 251. The Court said, that rule "is founded on
cogent reasons of justice and policy." In *Gibbs* v. *Cunning-
ham,* 1 Md. Ch. 52, the Chancellor said: "A *bona fide* pur-
chaser is not to lose the rights he supposed he was acquiring
when dealing with the agent of the Court, upon objections to
the model regulations of the sale, the non-observance of which
is not shown to have been injurious," and this was said of a
private sale, made after a public offer of sale, and at a
price greatly exceeding the best offer made at public sale,
though it was urged there that the deviation from the decree
in this respect, required the sale to be set aside.

The case of *Kelso* v. *Jessup,* 59 Md. 114, and *Neale* v.
*Peverley,* 114 Md. 199, relied on by the appellant present a
state of facts very different from that in the case before us.
In the former case the trustee who was interested in the
property, sold the property privately without the assent of
the parties interested for the same price at which it had
been withdrawn—and without consulting any of the other
parties, all of whom objected to its ratification when
informed of the sale. In the latter case, the trustee received
at public sale a bid of $1,700, and afterwards reported a
private sale at $1,500—though before he had entered into a
definite agreement to sell at that price, he had received an
offer of $1,600. It is proper to add that this trustee reported
all the facts in good faith to the Court, because he felt in
view of the character of his negotiations with Peverly, he
should permit him to complete the purchase conditioned

upon the deposit of $200, which was not in fact made when the offer of 1,600 was received, and that he should leave the Court to determine what right Mr. Peverly had acquired.

The second exception is that Mrs. Emily Stone Whiteley is the wife of James Gustavus Whiteley, a party to the cause, who, together with Benjamin Whiteley, also a party to the cause, holds an undivided one-third interest in the property as trustee under the will of Elizabeth Emeline Whiteley, deceased, and that a purchase by Mrs. Emily Stone Whiteley would in fact be a purchase made by James Gustavus Whiteley, of the interest held by him as trustee. There is no evidence even suggesting that Mrs. Whiteley's purchase is a purchase for her husband. There is no evidence that she is not abundantly able to comply with her offer, and she has given her own certified check to the trustee for $500 as a deposit on account of the purchase, indeed it would appear from the record that when she made her last offer of $37,500, she again made a second deposit of $500, without withdrawing the former deposit. Certainly there is at least $500 of her money in the hands of trustees as a deposit on account of the purchase.

Though a married woman, she is a competent purchaser, and upon failure to comply the property could be resold at her risk and she would be personally liable for any deficiency. This would have been so even before the Act of 1898, Ch. 457, now Code, Art. 45, sec. 5. Even if there were evidence that her bid was in fact made in the husband's interest, that would not affect the case. This is not a case of a trustee purchasing at his own sale where conflict of interest arises, and where, upon that ground alone, Courts will not ratify a sale except upon consent of all parties, and full proof that it will be for the advantage of all concerned. James Gustavus Whiteley would be competent to become a purchaser upon his own bid notwithstanding his position as one of the trustees for a party in interest. *Hopper* v. *Hopper*, 79 Md. 400. In that case property was sold under a decree for partition to two joint purchasers, P. Lesley Hopper and Sallie

A. Dennis, the former being one of the heirs at law of the property, and also the trustee of a lunatic brother who had an interest in the property, and it was held that this was no reason for setting aside a sale fairly made. The Court said: "Peter Lesley Hopper as one of the heirs at law had a common interest in the sale. He had the right in common with all other persons to be a bidder, and he had besides a right to protect his own interest, by making the property sell for its value.

The exceptions to the ratification of the sale were properly overruled, and the order appealed from will be affirmed.

*Order affirmed, with costs to the appellees above and below.*