## LOFT, INCORPORATED, vs. ALETHEA PENELOPE SEYMER ET AL.

*Lease of Trust Property—Procedure in Making—Ratification—*
*Objection by Stranger.*

Where a proposition for the leasing of trust property was,. as to certain of the terms offered by the trustees' representatives, not accepted by the proposed lessee, there was no binding contract for a lease.                              p. 644

A mere stranger, who has not even a contract for a lease of trust property, has no standing in court to object to a lease of such property to another.                         p. 644

Trustees desiring to lease trust property for a long term at a high rental were under no obligation to offer the lease at auction to the highest bidder, the only other possible bidder known at the time to the trustees being one who was then insisting upon the acceptance from him of a lower bid.     pp. 644, 645

Where the offer for a lease of trust property was at the time of its acceptance by the trustees the highest which they had any reason to expect, it was properly ratified by the court, although before the ratification a higher bid for a lease of the property was made by another.                         pp. 645-647

While a sale or lease of trust property is, until final ratification by the court, provisional only for the purpose of saving the beneficiaries of the trust from improvidence, unfairness, or fraud, it is not provisional in the sense that it should be rejected by the court in favor of a higher bid by another, not made until after the making by the trustees of the sale or lease in question.                           pp. 645, 646

When the order appealed from was based upon the appellant's lack of interest in the proceedings, a motion to dismiss the appeal on that ground will not be granted, but the question will be decided on the appeal.                         p. 647

*Decided June 30th, 1925.*

Appeal from the Circuit Court No. 2 of Baltimore City
(DAWKINS, J.).

Bill by Alethea Penelope Seymer, and another, infants,
and John Ridgely, Jr., and John E. Semmes, Jr., substituted
trustees, against Lucy Ridgely Buckler Seymer and others,
praying for the ratification of a lease made by said trustees
to the McCrory Stores Corporation. A decree having been
passed as prayed, ratifying the lease, Loft, Incorporated,
filed a petition asking that such decree be stricken out and
that the lease be auctioned to the highest bidder. From an
order striking such petition from the files, Loft, Incorporated,
appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS,
OFFUTT, PARKE, and WALSH, JJ.

*John A. Farley* and *Herbert Levy,* with whom were *Joseph
Sherbow* and *Coady & Farley* on the brief, for the appel-
lant.

*J. Bannister Hall, Jr.,* with whom were *D. List Warner*
and *Piper, Carey & Hall* on the brief, for McCrory Stores
Corporation, appellee.

*Gaylord Lee Clark,* with whom were *Semmes, Bowen &
Semmes* on the brief, for the trustees and beneficiaries under
the trust, appellees.

BOND, C. J., delivered the opinion of the Court.

This appeal, and the one next to be discussed, bring up for
review further proceedings in the matter considered by the
court in the case of *In re Buckler Trusts,* 144 Md. 424.
The two appeals now to be considered have been argued to-
gether, and are so connected that for the sake of clearness
the facts on which both are based will be reviewed in one
statement.

As was stated in the previous case, the trust fund is in-
vested in three stores on West Lexington Street, in Balti-

more City, each one of which is subject to a lease to expire
on December 31st, 1929. The trustees named in the original
deed of trust, J. LeRoy White and J. Southgate Yeaton,
both died, and for a time there were no trustees. During
that time, it appears, the McCrory Stores Corporation made
some overtures to Mr. John E. Semmes, who was counsel for
the beneficiaries of the trust, for a lease of all three stores
together after the termination of the three existing leases.
The extent of these negotiations is not shown on the record.
Then negotiations were taken up between Loft, Incorporated,
and Mr. Semmes for a like lease of all three stores, and pro-
ceeded almost to the point of agreement on all terms. The
record for the next appeal shows that counsel on both sides
of the negotiations agreed upon a lease for ninety-nine years,
with annual rentals increasing at intervals from $12,857.15
to $40,000, and were in agreement on all other terms except
four, stated in a letter from Mr. Semmes to Mr. Coady,
dated March 8th, 1923. Mr. Semmes demanded (1) that if
any existing lease terminated before its agreed date of ex-
piration, Loft, Incorporated, should not merely have an op-
tion to enter upon possession, as counsel for Loft, Incorpo-
rated, proposed, but should be obliged to enter; (2) that
money from insurance should be applied to rebuilding; (3)
that Loft, Incorporated, should pay the same rent on any
premises taken over before December 31st, 1929, as the ten-
ant of that property had paid under the previous lease; and
(4) that after that date the yearly rental under the new,
general lease should begin at once instead of at a time when
the property should be "ready for occupancy," as proposed
by Loft, Incorporated. "I do not understand," wrote Mr.
Semmes, "what you mean by 'ready for occupancy.' If you
will go over this, we are prepared to draw the lease as soon
as the title is in condition. I am now taking up the matter
of title. The two trustees are dead and equity proceedings
will have to be taken to appoint a new trustee and I will
advise you what action we propose to take." No answer to
this letter is shown by the record. One week later, March

15th, 1923, Mr. Semmes wrote again to Mr. Coady, and inclosed a written form of agreement thought to embody the views of both counsel. And the letter closed with this statement. "The other day I received a letter from the people who first offered to lease this property, and while I told them the matter had not been actually closed, I thought that the terms had been agreed upon. Of course, I do not want to lose them in case anything should happen to interfere with carrying out the agreement with the Loft people. We have both been letting the thing drift along without being actually put in a binding shape, but I understand that the Loft people really want the property on the terms embodied in this agreement." No answer to this letter appears in the record. Mr. Semmes testified that "Mr. Richards called upon me and asked if this property was still in the market. I told him of these negotiations, and that I had not any definite contract or obligation with the Loft people, but that I did not care to enter into any arrangement without notifying them. I then wrote a letter to Loft telling him that there was another party desiring to lease the property and unless I heard from them within two weeks, or ten days, I forget which, that I should consider that they did not want the property, and should make arrangements, if they were satisfactory, with the other person. I heard nothing from them during that period. About the end of that time Mr. Richards came with a proposition from the McCrory Company, with a resolution of the board offering practically the terms set forth in this lease, accompanied by a check for twenty-five thousand dollars, which I took. I then agreed that proceedings should be immediately instituted to have trustees appointed to carry out legally the terms of this lease, as I considered it an opportunity which was not to be lost." This is all the evidence on the progress of the negotiations with the two possible lessees.

On March 23rd, 1923, a proceeding was instituted in the Circuit Court No. 2 of Baltimore City, to have the court as-

sume jurisdiction of the trust and to appoint new trustees. An order *nisi* was passed, and before the time limited by it for showing cause in opposition to the relief prayed, Loft, Incorporated, sought, by filing what was called an answer, to prevent action looking to the lease of the properties to another lessee in derogation of rights which they considered to have been secured to them in the negotiations outlined above. The answer was ordered stricken from the files because Loft, Incorporated, had no interest to be prejudiced and no right to interfere in that proceeding; and on May 17th, 1923, John E. Semmes, Jr., and John Ridgely, Jr., were duly appointed substitute trustees. An appeal from the action of the court thus far was dismissed. *In re Buckler Trusts, supra.* On November 13th, 1923, while that appeal was pending, a formal lease was executed by the McCrory Stores Corporation and the trustees, subject to the approval of the Circuit Court No. 2 of Baltimore City. The annual rentals agreed upon ran from $11,428.58 to a maximum of $45,000, increasing with time, and exceeded those offered by Loft, Incorporated.

After the termination of the earlier appeal, a bill was filed by Loft, Incorporated, in the Circuit Court of Baltimore City, praying that the agreement which they considered had resulted from the negotiations between Mr. Semmes, Sr., and that corporation, be specifically enforced, and to this bill the trustees demurred. It is stated in the papers later filed on behalf of Loft, Incorporated, that the demurrer was argued on April 14th, 1924, and that upon a statement then made that the trustees were about to institute proceedings in the Circuit Court No. 2 for ratification of the lease to the McCrory Stores, the court deferred action on the demurrer to afford Loft, Incorporated, an opportunity to make a better offer. This, so far as anything in the record indicates, was the first mention of the possibility of a better offer by Loft, Incorporated; and it was made five months after the trustees had executed the formal lease to the McCrory Stores

Corporation upon terms which were then, and for eight months had been, the highest terms offered.

On April 23rd, 1924, the trustees filed in the Circuit Court No. 2 an original bill praying for ratification of their lease, and sent a copy of it to counsel for Loft, Incorporated. And that is the proceeding in which this first appeal was later taken.  Upon an answer filed by the adult beneficiaries consenting to a decree, and upon testimony taken as to the desirability of the lease in the interest of infant beneficiaries, the court below passed a decree finally ratifying the lease. Meanwhile counsel for Loft, Incorporated, assuming that because of the absence of the adult beneficiaries abroad, notice by publication, with a consequent delay, would be necessary, took no action.  Nine days afterwards, on May 19th, 1924, however, they filed a petition in the trustees' proceeding praying that the decree of May 10th, 1924, be stricken out, and that the lease of the property be auctioned to the highest bidder, adding that Loft, Incorporated, was "prepared to make a better offer."  The trustees and the McCrory Stores Corporation moved that the petition be stricken from the files, and by an order of court, passed on November 7th, 1924, it was stricken from the files accordingly.  From this last order, in the Circuit Court No. 2, the first appeal was taken by Loft, Incorporated.  In the meantime proceedings on the bill by Loft, Incorporated, for specific performance of its supposed contract for a lease, went forward in the Circuit Court.  The demurrer to the original bill was sustained on May 22nd, 1924, with leave to amend; an amendment was made on June 20th, 1924, and a demurrer to the bill as amended was sustained on December 20th, 1924; and on January 15th, 1925, an amended bill was filed, no longer praying specific performance of a supposed contract with Loft, Incorporated, but now praying that the lease to the McCrory Stores Corporation be declared null and void, and the right to a lease of the properties auctioned.  In this bill Loft, Incorporated, definitely offered to pay a rental of $1,-000.00 a year greater than that contracted for in the Mc-

Crory Stores Corporation lease. A demurrer to the bill was sustained and the bill dismissed by the circuit court on March 23rd, 1925. From this action the second appeal by Loft, Incorporated, and the one to be disposed of in the next case, was taken.

Our opinion is, in the first place, that the negotiations between Loft, Incorporated, and Mr. Semmes, Sr., did not reach the point of an agreement, such as the courts could have enforced if Mr. Semmes had had the power to bind the trustees. The last communication between them left four terms proposed on behalf of the trustees unaccepted by Loft, Incorporated, as has been stated; and in this situation the meeting of the minds of the negotiating parties essential to a binding agreement on the lease was lacking. *Joseph Bros. Co. v. Schonthal Co.,* 99 Md. 382; *Duker Box Co. v. Dixon,* 106 Md. 59; *Hand v. Evans Marble Co.,* 88 Md. 226, 231; *Brantly on Contracts,* 55 to 58. The case does not present such an agreement on all the terms discussed as that considered in *Read Drug & Chem. Co. v. Nattans,* 129 Md. 67. What, if any, importance there may be in the fact that the negotiating parties contemplated a formal lease to follow and complete their negotiations, we need not stop to consider. For the reason that an agreement on all terms was still lacking, the appellant has no rights of its own to be considered and enforced on this appeal.

The appellant urges that his competing offer be given consideration, however, on the ground that it is the duty of the court, of its own motion, if necessary, to promote the interests of infant beneficiaries of the trust by securing the best possible lease of the trust property, and to this end to act upon representations from any source. We shall assume, without deciding, that representations from strangers might be accepted in such a case as this. *Andrews v. Scotton,* 2 Bland, 629, 644; *Lawson v. State,* 2 Bland, 638, 639. We have then to consider whether the trustees were under any duty to offer the property at auction for a lease to the highest bidder. It would be an unusual proceeding. The ground

of contest would not be the single element of price, as in a sale, but might cover all the various terms on which a lessor and a lessee might negotiate. We have no information of a general market for such a long lease, at such high rental; and the bid accepted by the new trustees was the higher of the only two made up to that time. The only other bidder known, the appellant, was then insisting upon the acceptance of his lower bid. Under the circumstances, we are not able to say that the court should have required the trustees to auction the lease. *Cf. South Baltimore Co. v. Kirby,* 89 Md. 52, 65.

It being proper, then, for the trustees to negotiate a lease by private treaty, subject to the approval of the court, should the court in this case have rejected the lease made, and received a better offer from Loft, Incorporated, if the possibility of such an offer were brought to its attention? We think the fact that the offer of the McCrory Stores Corporation was at the time of its acceptance the highest which the trustees had any reason to expect, is decisive of this last question. The appellant argues that under the principles applied to sales by trustees, this offer, and the lease made, could be treated as provisional only, and subject not only to the approval of the court but also to rejection by the court upon the appearance of an opportunity to get a higher price. The full purport of the contention seems to be that up to the moment of final ratification an acceptance by a trustee of an offer to purchase is without any effect, and that a trustee can take no action which will give such an offer any standing greater than that of a bid. Such a rule would render a trustee a very ineffective aid to the court for dealing with possible purchasers of property, and would restrict the court itself to a procedure unsuited for dealing with some common conditions. We do not find this to be the law in Maryland. It is true that "both public and private sales reported by trustees under decrees of court are subject to the approval of the court, and, until ratified, any sale is only an offer to purchase." *Whitely v. Whitely,* 117 Md. 538, 544; *South*

*Baltimore Company v. Kirby,* 89 Md. 53. But it is true
only in a qualified sense. It is meant by this statement, not
that the court is always engaged in an auction up to the
moment of final ratification, but that the sale is to be treated
as provisional for the purpose of saving the beneficiaries of
a trust from improvidence, unfairness, or fraud. In *Whitely
v. Whitely, supra,* this Court said, further, that: "The court
should no more in this case, than in that supposed, depart
from the policy of encouraging purchasers at judicial sales
by sustaining those fairly made in all respects, and for a full
price, whether at public sale, or that failing, at private sale,
and by refusing to strip a purchaser of a right fairly ac-
quired, for a full consideration, merely because one who has
had his day for free competition, demands that he be given
a second opportunity." And in *Boyd v. Smith,* 127 Md.
359, 366, the Court, after having decided that the sale there
in question should not have been set aside for inadequacy of
price, added: "It would also, we think be a dangerous and
unsafe practice and one not to be tolerated, to reject sales so
made and reported, merely to let in other and higher bidders,
when no fraud, misrepresentation, or unfairness is shown, by
inadequacy of price or otherwise." And this principle would
seem to be one even more necessary when a lease of the trust
property, instead of a sale, is under consideration. A lease
is not ordinarily a thing which has a general, continuing
market; on the contrary, an opportunity for negotiating a
lease on good terms may well be lost if not seized and made
fast at once. And as has been said, when the trustees in this
case executed the lease now in question, they had no evi-
dence before them of a possible higher offer. The appel-
lant, the only other bidder, was trying to hold them bound
to one not so high. A preference had been given the appel-
lant in holding the privilege of leasing open to it for a lim-
ited period after the McCrory Stores Corporation had offered
more advantageous terms, but the appellant had failed to
accept a lease within that time even at the lower rental.
With these facts before them there was every reason why

diligent trustees should have proceeded with the McCrory Stores lease as they did. There was no improvidence in their doing so, no fraud and no unfairness. And, this being true, we think the lease made should be allowed to stand, despite the increased offer subsequently made by the appellant.

These conclusions require the affirmance of the order below, on the merits of the questions argued. A motion to dismiss the appeal has been filed on the ground that the appellant has no interest in the proceedings, but as that is also a ground upon which the lower court acted in passing the order appealed from, we have thought it necessary to review it on the appeal. The motion to dismiss the appeal will therefore be overruled.

*Motion to dismiss the appeal overruled. Order affirmed, with costs to the appellees.*