GILDEN *v.* HARRIS, SUBSTITUTED TRUSTEE, ET AL.
IN RE WEST'S TRUST ESTATE
(Two Appeals in One Record)
[No. 67, October Term, 1950.]

*Decided January 10, 1951.*

The cause was argued before MARBURY, C. J., and DELAPLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Robert L. Mainen* and *Jacob D. Hornstein* for the appellant.

*Martin Z. Vogelhut,* with whom was *H. LaRue Parke* on the brief, for Helen West Harris.

*Melvin J. Sykes* for Abraham Klein.

MARBURY, C. J., delivered the opinion of the Court.

On August 29, 1949, a decree was entered by the Circuit Court of Baltimore City in a case therein pending, involving the trust estate of Jane L. West, by the terms of which decree Helen West Harris, substituted trustee of the said trust estate, was authorized to sell the leasehold property situated in the city of Baltimore, known as Nos. 4003-4005 Belle Avenue. The decree stated that the sale might be at either public or private sale, and then, after a semicolon, added the following: "if at public sale, she shall give at least three weeks notice by advertisement, inserted in such daily newspaper or newspapers published in the City of Baltimore, as she shall think proper, of the time, place, manner and

terms of sale, which shall be cash, upon ratification of said sale by this Court; or said Substituted Trustee may submit to this Court for its approval and ratification any offer or offers she may receive for the purchase of said property at private sale, provided no private sale shall be for a less amount than the value of said property as shown by the testimony in this case".

On March 21, 1950, the trustee reported that the appraised value of the properties was $8,250, that she had diligently endeavored to effect a sale, and she brought into court a duly executed contract for a private sale at $8,600 to Max Gilden, on which $1,000 had been paid by the prospective purchaser as a deposit. The trustee further stated that the price was a fair and reasonable one, and was the highest price obtainable. A copy of the contract was attached. The contract provides that it shall be null and void unless approved by the court, and contains a provision that settlement is to occur within 60 days from ratification. It also contains the following sentence: "It being understood and agreed that in the event this sale is not ratified and approved by said court within 30 days from the date hereof, then the sale and this agreement shall be void and all deposit monies shall be returned to the Buyer." An order *nisi* was passed on this report.

On March 30, 1950, Louis Silberstein, attorney for Abraham Klein, sent a letter to Judge Moser, who was sitting in the Circuit Court, stating that Klein had been informed by the Lincoln Realty Company, agent for the trustee, that the property could be purchased for $8,300, and that Klein executed and delivered to such agent a contract for that purpose, but that several days later, the contract was returned, and thereafter the trustee entered into the contract of $8,600 which had been reported to the court. The letter further stated that on March 23, 1950, an offer had been made on behalf of Klein to purchase the property at $8,800 which had been refused, as the Gilden contract had been reported. The letter further stated that Klein was now

36

prepared to enter into a written agreement to purchase the property at $9,300, and the matter was therefore brought to the attention of the court. Subsequently, a petition was filed by Klein to the same effect, stating, in addition, that he had filed in the court a contract executed by him for the purchase of the property at $9,300, and had deposited with the clerk a certified check in the amount of $1,500 on account of the purchase price. The petition asked for leave to intervene, and requested the court not to ratify the pending sale. An order to show cause was passed on this petition. The trustee answered, neither admitting nor denying the allegation with respect to the Lincoln Realty Company, and the $8,300 offer of Klein, and asking the assistance of the court in the determination of the several allegations. Gilden filed a petition for leave to intervene and was granted such leave, and he then demurred to, and answered, the Klein petition. Gilden set out in his answer that the court lacked jurisdiction to vacate or set aside a trustee's sale made in good faith, except on the ground of clear and unmistakable proof of inadequacy of price directly attributable to some failure of reasonable diligence or effort on the part of the trustee, and stated that the trustee exercised reasonable diligence and effort in making the sale to him. He further stated that it has always been the law of Maryland that any party whose interest is exclusively that of a disappointed bidder is not legally entitled to intervene, or to except to any judicial sale made in good faith, and reported to the court by a properly qualified trustee. He controverted the allegations of fact made by Klein in his petition. The court set these matters down for hearing.

The testimony shows that on March 16, 1950, the trustee was offered a contract of $8,300 by Abraham Klein through the Lincoln Realty Company. On March 17, the contract of Max Gilden of $8,600 was received by her. On March 24, the trustee's counsel received a letter from Klein's counsel offering $8,800. The president of the Lincoln Realty Company, Carl W. Juelg, said he

was engaged by the trustee to sell the property on February 24, 1950. The company placed For Sale signs on the property, advertised it numerous times, and showed it numerous times. They had one $8,000 offer and one $8,250 offer; then Mr. Klein offered first $8,000, and when he was told $8,250 had been turned down, he offered only $8,300, although he had been told by the witness that he should make an offer of at least $8,500. Klein said $8,300 was his top offer. This $8,300 offer was presented to the trustee, but she did not accept it. The trustee testified that she was the direct beneficiary of the trust estate during her lifetime, and that she has two children aged, respectively, three and thirteen, who inherit the trust at her death. She said that she thought she acted hastily in accepting the $8,600 offer, but she thought it was the best offer at the time, and she would now rather the sale not be ratified for $8,600 because the larger the price, the greater amount there would be in the trust estate. She had tried to sell the property herself since November, 1948. It was in very bad condition and needed repairs involving considerable expenditure. Mr. Lockwood, a real estate broker, had attempted to get her a customer, but the highest offer she had been able to obtain was $8,000; then she received an $8,300 offer from Mr. Klein, and then finally she got the $8,600 offer which she reported. At that time, the Lincoln Realty Company told her that was the highest offer she was going to get. She says she thought she had acted hastily, in view of what she learned subsequently about the additional offers, and her reason for not wanting the sale ratified was that she had had these higher offers since.

The chancellor dismissed the intervening petition of Gilden, and dismissed the petition filed by Klein, and said he was ready to receive any sealed bids anyone was prepared to offer. Gilden objected to the chancellor's receiving any other bids, but the chancellor ruled that Gilden's contract was a mere offer until approved by him, and that the trustee acted hastily, with inexperience,

38

and improvidently. He then opened the bids, and found two offers accompanied by certified checks, one of $9,500, and the other of $10,100 on behalf of Klein, also with a certified check. The trustee was instructed to prepare a contract on the offer of Abraham Klein. The sale reported by the substituted trustee to Gilden was rejected, and the trustee was directed to accept the $10,100 offer on behalf of Klein, and to report this sale. Gilden excepted to the report of the Klein sale, and the exceptions were heard by agreement on the testimony already taken, except for a letter dated March 16, 1950, written to the attorney for Klein by Carl W. Juelg. This letter was admitted in evidence by agreement, over a general objection to any similar evidence, and is as follows:

"Relative to our telephone conversation of today, and pertaining to the offer and contract of sale your client Mr. Abraham Klein has made on 4003-4005 Belle Avenue, Baltimore, Md.

"It is our understanding that you have in your possession Mr. Klein's check drawn in the amount of $500.00 and representing the deposit on the above mentioned property. Upon receipt of this letter you will surrender this check to us to be deposited in our escrow account.

"In the event this sale is not approved and accepted by the Circuit Court of Baltimore City, or the Estate cannot convey the property by a good and merchantable title to your client Mr. Abraham Klein, then the entire amount of the deposit money, namely $500.00 shall be returned to Mr. Klein."

The court, on June 28, 1950, refused Gilden's petitions and exceptions, and ratified the sale to Klein. Gilden appealed from the order passed on the ninth day of May, which rejected his bid and directed the trustee to accept the Klein bid, and he also appealed from the order passed on the twenty-eighth day of June, which overruled his exceptions and finally ratified the sale to Klein.

We have set out the proceedings at some length because the contention is made that this case is an ex-

ception and should be so treated. The appellees, who are the trustee and Klein, contend that the agreement of March 17, 1950, was merely an agreement to submit Gilden's offer to the court; that the trustee was improvident because, if this was a sale, she did not intend it to be one, but thought it was merely an offer; that she was improvident because she did not notify the appellee, Klein, that a higher bid had been received, and give him an opportunity to increase his bid; and that the court was justified in refusing to ratify the Gilden sale because infants were involved, who are entitled to the special protection of the court.

We are unable to find that the trustee acted improvidently, or hastily, as she belatedly attempted to admit. She was, it is true, not experienced in the sale of real estate, or in court proceedings, but that is true of many trustees. She had counsel, and she reported to the court the highest sale she had been able to make, after some months of effort through two real estate brokers on a declining market, and on the advice of the last one that this was the highest offer she was going to get. It is true she now says she thought this was an offer only, but this statement cannot affect what she did, which was to report a sale, subject to the approval of the court, made by a contract which she had executed. There is no hint or taint of fraud in the transaction, and there was no obligation on the part of the trustee to go back to Klein when he had said $8,300 was his top offer. The letter from Mr. Juelg was written after Klein had made this statement, and, while it might contain some intimation that upon receipt of Klein's deposit (which had not been turned over), the trustee would report the sale to the court, this was, of course, subject to any higher offer being received in the meantime, before the trustee had signed the contract and received the deposit. When the agent received the higher offer from Gilden, it had a right to assume that Klein was telling the truth when he said he had submitted his top offer, and, therefore, there

was no occasion to see him again. If Klein thereby lost his opportunity, it was his own fault.

The trustee, of course, was anxious, and it was her duty, to get as high an offer as she could, and she is sorry now she reported the one she did, and does not want the sale ratified for the reason she very frankly gives, that she and her children will thereby get more money. Simply because children are involved, however, is not a sufficient reason for a court to destroy the rights of a purchaser in good faith, in order to get more money for such children. The case, therefore, turns upon what are the rights of such a purchaser under such circumstances.

A century and a quarter ago, Chancellor Bland had before him the case of *Andrews v. Scotton*, (2 Bland 629). In that case a sale had been made of land at $3.10 an acre. A petitioner said that he offered the trustees $3.57 per acre. It was admitted in that case that there was no fraud in the transaction. The chancellor reviewed the practice in England of opening the bids, and said, 2 Bland at page 644: "In this State, there has been no instance of opening the biddings or suspending the sale merely to let in another and a higher bid, and for no other cause. But in this State, as well as in England, if there should be made to appear, either before or after the sale has been ratified, any injurious mistake, misrepresentation or fraud, the biddings may be opened, the reported sale rejected, or the order of ratification rescinded, and the property again sent into the market and re-sold." And again, 2 Bland at page 671: "I have before said in this case, that there has been no instance of opening the biddings here, merely to let in a higher bid; and this is the first proposition of the kind, that I have any knowledge of having ever been made to this Court. If any small advance in price, such as that now offered, were to be admitted as a sufficient ground for letting in a new bidder, to the exclusion of the reported one, it is obvious, that the practice might greatly embarrass sales under decrees of this Court. By adopting

the English practice of opening the biddings, as it is called, the regularity of public sales by trustees, as practised here, would be virtually broken in upon, and destroyed by the Court itself; bidders would be discouraged; sales delayed; and expense much increased; for it could not be deemed proper to receive a bid in any form, without allowing a day to all interested, to come in, and show cause why the sale should not be ratified. Upon general principles of convenience and economy therefore, I deem it improper in any case, to reject a reported sale, merely to let in a higher bid, where no fraud, misrepresentation or unfairness is pretended or charged."

The rule laid down by Chancellor Bland has been consistently followed in this State. *Whitely v. Whitely,* 117 Md. 538, 84 A. 68; *Boyd v. Smith,* 127 Md. 359, 96 A. 526; *Loft, Inc. v. Seymer,* 148 Md. 638, 129 A. 911; *Blank v. Frey,* 165 Md. 647, 170 A. 156; *Cook v. Safe Deposit & Trust Co.,* 172 Md. 398, 191 A. 713.

In *Whitely v. Whitely, supra,* the court said that both public and private sales reported by trustees under decrees of court are subject to the approval of the court, and, until ratified, any sale is only an offer to purchase. In that case, there was a private sale for $37,500 which was reported by the trustees. Another party filed exceptions with a bid of $38,500, accompanied by a certified check for a deposit. The court refused to upset the original sale, and said it should not depart from the policy of encouraging purchasers at judicial sales by sustaining those fairly made in all respects, and for a full price, and by refusing to strip a purchaser of a right fairly acquired, for a full consideration, "merely because one who has had his day for free competition, demands that he be given a second opportunity." [117 Md. 538, 84 A. 71.] In *Loft, Inc. v. Seymer, supra,* the court commented on the statement made in the *Whitely* case that a sale was only an offer until ratified, and said that was true only in a qualified sense. "It is meant by this statement, not that the court is always engaged in an

auction up to the moment of final ratification, but that the sale is to be treated as provisional for the purpose of saving the beneficiaries of a trust from improvidence, unfairness, or fraud." [148 Md. 638, 129 A. 914.] In *Blank v. Frey, supra,* the rule is stated that "when a property has been fairly brought to its market, such as the market is at the time, the subsequent possibilities of obtaining a higher price do not alone furnish sufficient ground for setting aside the sale made." [165 Md. 647, 170 A. 157.] In *Cook v. Safe Deposit & Trust Co., supra,* the court said [172 Md. 398, 191 A. 716.] : "Once having accepted a bid, the executor or trustee cannot reopen the sale to let in disappointed or rival bidders", and : "Disappointed bidders, after a sale is closed, do not determine the price at which property will be sold, for the sale frequently, as in this case, enhances the value of property, and adds to its attractiveness." See also *Graffam v. Burgess,* 117 U. S. 180, 191-192, 6 S. Ct. 686, 29 L. Ed. 839 and cases cited.

The general rule, therefore, is that if a trustee, acting diligently and without fraud, accepts an offer at private sale for the most that he is able to obtain for the property *at the time,* and reports that offer to the court, it will not be set aside merely because someone else is *later* willing to give more for the property. If this were not so, prospective buyers would be unwilling to deal with a trustee because the minute the figure at which they contract to purchase is reported, it might be immediately upset by someone offering a higher price. The fact that there are infants involved does not change this rule. There were infant beneficiaries in the *Loft* case, *supra,* and the contention was made that it was the duty of the court, of its own motion, to protect their interests by securing the best possible lease of the property in question. Yet this court rejected that contention and refused to accept the later higher offer.

The appellees argue that the decree in this case was different from the ordinary decree, and that its wording indicated that the trustee had to submit to the court for

its approval any offer or offers she might receive. This, they say, was a departure from the ordinary procedure in that the trustee was not to enter into a contract, but was only to present to the court an offer. They further contend that this was understood by Gilden because of the provision that the sale had to be ratified and approved within thirty days. They say that this case is like the case of *Shirk v. Soper*, 144 Md. 269, 124 A. 911, 913. In that case, the property in the trust estate was a tract of about eight acres, part of which was operated, and the whole of which was adapted for development, as a quarry. It was to be sold in parcels. A sale of 2.7 acres was reported to the court, and one of the heirs excepted on the ground that the price was inadequate. After taking testimony, the court ratified the sale, and an appeal was taken. This court said that in dealing with the question whether the sale should have been ratified, it was not in the position it would occupy had the decree been in the usual form, authorizing the trustees to sell at public or private sale, and requiring them to report the sale to the court after it had been made "* * * for, in this case, the trustees, by the plain and clear language of the decree, were not authorized to make a private sale except upon 'due proof and approval by the court, upon such terms as the court shall approve.' " The court then went on to say that the power to sell at private sale conferred by this decree was not an absolute power, but was a conditional power, and the trustees had no power to sell until they had complied with the conditions. The question before the court was not whether it should set aside a sale that had actually been made, but whether it should approve a proposed sale. The court said that no sale could have been made under that decree without the approval of the court after "due proof had been submitted". The court considered the testimony, found that the price of the proposed sale was inadequate, and should not be approved, and reversed the order of the lower court approving it.

That case, as the court recognized, was an exception to the general rule, and, on account of the peculiar conditions involved in the property, the decree was drawn in the way it was. We are unable to find any resemblance in the decree in the case before us to that in the *Shirk* case. Here, there is no provision that the trustees can make a private sale only upon "due proof and approval by the court, upon such terms as the court shall approve." The decree in this case does not require further proof than that already taken in the case, but provides, as is usual, that a private sale shall not be for a lesser amount than the value of the property as shown by the testimony already taken. Neither the nature of the property, which is the ordinary lease-hold, nor the decree that was passed, indicate a situation different from that customarily found in such sales. We are, therefore, of the opinion that the proceedings should have been treated in the ordinary manner and under the line of decisions heretofore discussed. The thirty-day clause in the contract cannot be construed as changing a definite agreement, signed by both parties, into something else. We are unable to accept the appellees' view that its insertion showed that Gilden understood anything other than that he was making a contract subject to the ratification of the court, such as is usual in all sales made by trustees.

Under these circumstances, it was the clear duty of the chancellor to have rejected the bid of Klein, the disappointed bidder, and to have ratified the Gilden sale. He did reject the Klein petition, but after the Gilden price and the Klein price had been spread upon the records, he asked for sealed bids, opened them and proceeded to have the trustee report and to ratify the sale to Klein at a price $800 more than Klein's offer made in his intervening petition. This was a procedure not only unfair to Gilden, but a procedure which, if upheld, would make the position of any purchaser from a trustee very insecure, and would obviously prevent many possible buyers from making offers. It is the duty of a court of equity to support its trustees in obtaining as many

offers as possible, and when the trustee has, in his best judgment, obtained the highest offer he can obtain, and has reported it, the court should, in the absence of fraud or improper dealing, or clear inadequacy of price as of the time the sale is made, or some valid legal objection, sustain the trustee and ratify the sale.

It is unfortunate in this case that the beneficiaries of the trust will not be able to receive the additional $1,500 offered by Klein, but they have never been entitled to it, and it was obviously only after the trustee had obtained the highest price she thought she could then get that this additional offer was made. As for Klein, he started at $8,000, then offered $8,300, which he told the Realty Company was his limit. Then, when he found a sale had been made at $8,600, he offered $9,300, and, in his sealed bid, offered $10,100. In his effort to get the property at a low price, he apparently overreached himself, and he can have no complaint.

The order rejecting the sale to Gilden will be reversed, as will the decree ratifying the sale to Klein, and the case will be remanded in order that the court may ratify the Gilden sale.

> *Order of May 9, 1950, reversed. Decree of June 28, 1950, reversed, and case remanded for further proceedings in accordance with this opinion. Costs above and below to be paid by Abraham Klein.*