573 A.2d 433

**Morris POLLEKOFF, et al.**

v.

**Walter M. BLUMENTHAL, et al.**

**No. 1369, Sept. Term, 1989.**

Court of Special Appeals of Maryland.

May 14, 1990.

Michael A. Lieberman (Bell, Callihan & Lieberman, P.C., on the brief), Beltsville, for appellants.

Michael D. Dobbs (E. Joseph Fitzpatrick, Jr. and Ward, Klein & Miller, on the brief), Gaithersburg, for appellees.

Argued before WILNER, BISHOP and ROSALYN B. BELL, JJ.

WILNER, Judge.

Morris Pollekoff, his brother Jack, and their respective wives appeal from an order of the Circuit Court for Frederick County ratifying the sale of certain land in which they had an interest to Potomac Woods Development Corp. (Potomac Woods). A number of issues are presented in the appeal, but, as we find no error in the court's disposition of the action, we shall affirm.

In February, 1962, the Pollekoffs, together with Walter M. Blumenthal and his wife, acquired three parcels of land consisting of some 267 acres in the aggregate. Each of the couples, as tenants by the entireties, took title to an undivided one-third interest in the properties. It was apparently agreed that Mr. Blumenthal would manage the properties and account to his co-owners for all rents and profits.

On July 1, 1983, the Pollekoffs sued the Blumenthals for accounting. Charging that the Blumenthals were in possession of and collecting rents from the property and that they had failed to respond to a demand for accounting, the Pollekoffs asked for orders requiring an accounting and appointing a receiver. Mr. Blumenthal responded that some of the land had been sold over the years and that he had, in fact, accounted for all sales proceeds and other monies received by him; Mrs. Blumenthal alleged that she and Mr. Blumenthal had become divorced, that they therefore each had a one-sixth interest in the properties, and that she had no knowledge of what was received from the properties.

After some discovery, all parties agreed to a consent judgment entered October 31, 1984, requiring an accounting by Mr. Blumenthal of all rents and profits from the properties since December 31, 1980, and appointing W. Jerome

Offutt (counsel for the Pollekoffs) and G. Edward Dwyer, Jr. (then counsel for Mr. Blumenthal) as receivers of the approximately 130 acres of property still owned by the parties. Upon his appointment to the Bench, Mr. Dwyer was replaced, both as counsel for Mr. Blumenthal and as a receiver, by Charles B. Frey. The receivers were vested with "all the usual powers, rights, and duties of Receivers appointed by this Court" plus certain specific powers enumerated in the judgment that dealt principally with the management of the property and the collection and accounting of rents and profits from it.

In August, 1985, the receivers, facing the need to negotiate a right-of-way easement with the telephone company, requested and received permission from the court to have the property appraised. Following receipt of the appraisal, which valued the land at $460,000, the receivers sought and received authority to grant the easement at the price offered by the company.

A few months later, in December, 1985, the receivers filed another petition captioned "PETITION FOR AUTHORITY TO SELL PROPERTY." Reciting their general authority under the consent judgment and their recent sale to the telephone company, they averred that they "have determined and believe it to be for the best interest of the Parties to this Proceeding that the remainder of the tract of land described in the deed aforesaid recorded in Liber 664, folio 190, the Owners thereof not being compatible in the management and utilization of said property."[1] On this and the other averments of the petition, the receivers asked for an order authorizing them "to list the property with one or more reputable Real Estate Brokers dealing in the sale of the above described property." Without objection, the

---

1. The quoted sentence, as written, is grammatically incomplete. It is evident that one or more words following "folio 190" have been omitted. To make sense substantively, it would appear that what the receivers intended to allege was their belief that the tract of land should "be sold." Otherwise, there would be no reason to ask for permission to list the property.

court granted the petition and, by order dated December 3, 1985, authorized the receivers "to enter into a Contract with Real Estate Brokers for the purpose of selling the remainder of the Receivership Estate ... and to pay the prevailing Commission to such Broker that procures a Purchaser of the said real estate that is finally ratified by this Court." The order further directed the receivers to "report to the Court any Offer to Purchase submitted in any Contract for final ratification by this Court."

Pursuant to that authority, the receivers listed the property with a broker (Long & Foster Real Estate, Inc.) for a price of $2,100,000. In October, 1986, the receivers reported that they had received a contract through Long & Foster from Alan I. Kay Company, Inc. to purchase the property for $2,151,000, which was far in excess of the appraised value, and they asked the court to approve and ratify the sale. After a hearing on the petition, the court did approve the sale and authorize the receivers to consummate it. A month later, however, the receivers informed the court that the buyer had withdrawn from the contract, as it had a right to do under the contract. A year later, a second sale, for $1,750,000 to Omega Holding Group, Inc., also fell through. As with the first proposal, the contract was procured by the broker, the receivers reported the contract to the court and petitioned for authority to accept it, and, without objection, the court approved the sale and authorized execution of the contract. The record does not reflect why that sale was not consummated; we note that, as in the first contract, the buyer reserved the option to withdraw if certain feasibility studies proved unsatisfactory.

Six months after the failure of the second contract, the receivers were back with another petition for authority to sell the property, this time to Potomac Woods Development Corp., Inc. for $1,500,000. As with the previous contracts, this too was procured by the brokers (Long & Foster and Shannon & Luchs), but unlike the earlier contracts, this one did not allow the buyer to disavow at its option. The receivers averred that, based on the 1985 appraisal, the

offer was a fair and reasonable one and that acceptance was in the best interest of the parties, and they asked the court to approve and ratify the sale. It appears that, subject to court approval, they and Potomac Woods had already signed the contract. Upon that petition, which the court regarded as a Report of Sale, the court scheduled a hearing for July 14, 1988, "for an Order confirming the Sale of the remainder of the real estate ... in accordance with the Report of Sale ... and for such other and further relief as the Court may deem proper." Although Potomac Woods was not listed as an interested person in the petition, the company was sent a copy of the petition and was informed of the time and place of the hearing. Assuming from the notice that the contract would be approved routinely, Potomac Woods chose not to attend the hearing.

The company's assumption proved to be unfounded. After a brief presentation by the receivers, including a representation that Mrs. Blumenthal, who then lived in Florida, had consented to the petition, the court was informed that Morris Pollekoff wished to make a statement. Mr. Pollekoff then informed the court that he did not wish to sell the property at all "because it's not to my advantage to sell it right now." In place of the offer from Potomac Woods, he offered to buy the property for $1,510,000—$10,000 more than the Potomac Woods offer. He agreed to a "no contingency" sale with settlement to occur within 30 days. Morris's brother Jack then stated that he would join Morris in that offer. After some further discussion about whether the deposit check should be payable to the receivers or to Mr. Blumenthal, the court declared that the offer from the Pollekoffs should be accepted. It concluded the hearing with the commitment that "if you'll [the receivers] present an order to me as soon as you can, I will order that the property be sold to them within thirty days from the date of the order that I signed."

The receivers promptly prepared a written contract listing themselves as sellers and the Pollekoffs as buyers and showing a price of $1,510,000. On July 19, 1988, the court

confirmed and ratified that contract subject to the caveat that the oral representations made by the Pollekoffs in open court would prevail "should there be any conflict with the written Agreement." Nine days later, having learned what occurred, Potomac Woods filed a petition for rehearing and to intervene. Complaining that the hearing of July 14 was supposed to be solely on the issue of ratifying the sale to it and not for the purpose of entertaining additional bids, Potomac Woods charged that the receivers, when informed of the Pollekoffs' last minute offer, had an obligation to allow Potomac Woods to make a counter-offer.

The court decided to hold a hearing first on whether to allow Potomac Woods to intervene in the proceeding. Prior to that hearing, which eventually occurred on November 22, 1988, the receivers received yet another offer, from Real-Prop, Inc., in the amount of $1,800,000, and, in a Motion for Appropriate Relief, they submitted the entire matter to the court "for its consideration and guidance." The hearing on intervention was wide-ranging, with a great deal of discussion on the merits of Potomac Woods's position. Eventually, the court decided to allow intervention, finding that the notice of the July 14 hearing did not apprise the company that another offer might be submitted, that it "justly believed" that the hearing would be limited to whether its offer should be approved, and that it had an equitable interest in the matter. An order granting leave to intervene and setting the whole matter for rehearing was entered the same day.

The Pollekoffs responded to this turn of events with a petition to terminate the receivership. In the petition and accompanying memorandum, they took the position that as both they and the Blumenthals had consented to the $1,510,-000 offer made at the July hearing, the ratification of that agreement "settled all outstanding issues" between the parties, and that, as there was no further controversy between them, the receivership should be terminated. Potomac Woods then attempted to steer the matter in yet another direction by seeking permission, as an alternative to

ratification of its first offer, to present a further offer. Indeed, on the day of the final hearing on the matter, it wrote a letter to the judge amending its earlier offer by raising the purchase price to $1,810,000 and otherwise matching the terms offered by the Pollekoffs.

The court brought an end to all of this, in the circuit court, on July 7, 1989, with an order confirming and ratifying the Potomac Woods contract for $1,500,000 submitted to the court a year earlier, rejecting the Pollekoffs' contract that it had previously ratified, and rejecting as well all other contracts and the Pollekoffs' petition to terminate the receivership. From that order, the Pollekoffs have brought this appeal, complaining that the court erred in (1) allowing Potomac Woods to intervene, (2) setting aside the ratification of their contract and eventually ratifying the Potomac Woods contract, and (3) failing to terminate the receivership.

### Appealability

■ Although no one has raised the issue of appealability, given the somewhat convoluted nature of the proceedings below, we think the point ought to be addressed, merely to confirm that the July 7, 1989 order is indeed appealable. That order, in effect, rescinded an otherwise final order ratifying the sale to the Pollekoffs and directed the receivers to convey the property to Potomac Woods. Implicit in the order was the further requirement that the receivers refund the deposit paid by the Pollekoffs. Those aspects make the order appealable. *See Standish Corporation v. Keane,* 220 Md. 1, 6, 150 A.2d 728 (1959):

> "Ordinarily no appeal lies from an order rescinding an order finally ratifying a trustees' sale which has not been enrolled ... but when such order also directs a return of the deposit and requires the trustees to proceed to make a resale of the property originally sold by the trustees to the reported purchaser, then the order is in the nature of a final decree from which the original purchaser may appeal."

*Intervention*

■ Md. Rule 2–214(a)(2) permits a person to intervene in a pending action as of right when "the person claims an interest relating to the property or transaction that is the subject of the action, and the person is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest unless it is adequately represented by existing parties." Relying on *Old Colony Trust Co. v. Penrose Industries Corporation,* 387 F.2d 939 (3d Cir.), *cert. denied* 392 U.S. 927, 88 S.Ct. 2283, 20 L.Ed.2d 1385 (1968), interpreting Fed.R.Civ.P. 24, the Pollekoffs contend that Potomac Woods does not satisfy that test or the test required for permissive intervention. We find that case distinguishable and conclude that Potomac Woods fits the intervention of right test to a "T."

In *Old Colony Trust Co.,* a secured creditor who had sold collateral that it held to a third party sued for declaratory judgment that the sale was commercially reasonable. The defendants were the debtor and other creditors having an interest in the collateral. The proposed intervenor was a person who had no interest whatever in the transaction or the property but simply alleged that he was willing to pay more for the collateral than the person to whom it was sold. Although concluding that the price offered by the intervenor might be relevant to the question of whether the sale was commercially reasonable, the court held that the proceeding could not be turned into a "judicially conducted auction sale" and that the proposed intervenor's status as merely would-be purchaser was not sufficient to require, or permit, intervention. *Id.* at 941.

Here, of course, Potomac Woods was not merely a would-be purchaser without any present interest in the property. It had a signed contract with the receivers that had been submitted to the court with a favorable recommendation for approval. It had also given the broker, as agent for the receivers, a $50,000 deposit. Certainly, it claimed (and had) an interest in the property or transaction that was the subject of the proceeding, and just as certainly once the

receivers withdrew their support for the contract in favor of the offer by the Pollekoffs, the protection of that interest could not be assured by the existing parties. We believe that it had a right to intervene. *See Miracle House Corporation v. Haige,* 96 So.2d 417 (Fla.1957).

### Propriety of Order

■ The Pollekoffs mount a number of interrelated challenges to what the court did. Because the receivers had no inherent authority to sell the property, they treat the contract submitted to the court as a mere offer of no legal significance. The proposal made by them at the July, 1988 hearing was a better one for the receivership and the parties, and the court was fully justified in approving it over the Potomac Woods contract. Having done so, they contend, it was error for the court to revoke that approval in favor of a less advantageous arrangement. Additionally, they press their claim that their offer, once accepted by the Blumenthals, constituted an accord and satisfaction between the parties to the action, thereby effectively terminating the receivership and the court's authority to deal with the property. We find no merit in any of these claims.

We shall deal first with the last contention—that once their offer was accepted and approved by the court, the receivership should simply have been terminated. There are several answers to that argument. For one thing, it does not appear that Mrs. Blumenthal was ever consulted as to the Pollekoffs' offer or that she ever agreed to it. Moreover, neither the oral offer made in court nor the written contract that followed was structured as a buy-out of the Blumenthals' interests in the property, although that is how the Pollekoffs now characterize them. They both were in the form of an agreement between the receivers, as sellers, and the Pollekoffs, as buyers, for the entire property. Consummation of that proposal would have required the Pollekoffs to pay the entire purchase price to the receivers and for the receivers then to account for the net proceeds. Thus, even if agreed to by the Blumenthals, the

offer would not have wound up the receivership or sufficed as cause to terminate the court's jurisdiction in the matter.

■ The other contentions are controlled by a long line of cases beginning with *Andrews v. Scotton,* 2 Bland. 629 (1823) and continuing through *Probert v. Garrett, Exec.,* 221 Md. 188, 156 A.2d 651 (1959). In *Gilden v. Harris,* 197 Md. 32, 78 A.2d 167 (1951), the Court reviewed the cases decided to that point, concluding from them, at 42, 78 A.2d 167:

> "The general rule, therefore, is that if a trustee, acting diligently and without fraud, accepts an offer at private sale for the most that he is able to obtain for the property *at the time,* and reports that offer to the court, it will not be set aside merely because someone else is *later* willing to give more for the property. If this were not so, prospective buyers would be unwilling to deal with a trustee because the minute the figure at which they contract to purchase is reported, it might be immediately upset by someone offering a higher price."

Continuing at 44, 78 A.2d 167, the Court held:

> "It is the duty of a court of equity to support its trustees in obtaining as many offers as possible, and when the trustee has, in his best judgment, obtained the highest offer he can obtain, and has reported it, the court should, in the absence of fraud or improper dealing, or clear inadequacy of price as of the time the sale is made, or some valid legal objection, sustain the trustee and ratify the sale."

This principle was reconfirmed in *Standish Corporation v. Keane, supra,* 220 Md. 1, 150 A.2d 728, and *Probert v. Garrett, Exec., supra,* 221 Md. 188, 156 A.2d 651.

There is no question here of fraud, improper dealing, or clear inadequacy of price; nor is there any suggestion that the price obtained from Potomac Woods was not the highest price obtainable at the time. What the Pollekoffs did was precisely what the principle enunciated in *Gilden* was intended to avoid—using a legitimate bid obtained in an arms

length transaction as simply a base to trump with a few extra dollars. The pernicious effect of that, as we have seen, was to touch off another round of bidding, making a shambles of the orderly process intended by the law and placing in jeopardy the willingness of both bona fide purchasers and real estate brokers to deal with receivers.

The Pollekoffs acknowledge the *Gilden* principle but seek to avoid it by urging that it applies only to trustees who have an independent power of sale and not to receivers who are empowered only to bring offers to the court. We fail to see the distinction. So long as the sale is one that must be reported to and ratified by the court, whether the offer is obtained by a trustee or a receiver seems to us to make no difference. Both act as agents of the court; in this regard, both perform essentially the same function.

JUDGMENT AFFIRMED; APPELLANTS TO PAY THE COSTS.