642 A.2d 270

**James BOURNE**

v.

**Richard D. LLOYD, Special Administrator
of the Estate of John Briscoe Howes.**

**No. 1312, Sept. Term, 1993.**

Court of Special Appeals of Maryland.

June 7, 1994.

Debra B. Koehler, argued (Naji P. Maloof, on the brief), Upper Marlboro, for appellant.

Mary M. Krug, Dunkirk, argued for appellee.

Argued before MOYLAN, GARRITY and BLOOM, JJ.

BLOOM, Judge.

After accepting the resignations of appellant, James Bourne, and others as co-personal representatives of the Estate of John Briscoe Howes, the Orphans' Court for Calvert County appointed appellee, Richard D. Lloyd, as special administrator. In this appeal from orders of the orphans' court granting appellee's petition to sell real estate and approving the sale made by appellee, appellant presents the following issues:

1. Did the court err in approving the sale of the real property of the estate where the method of valuing and offering the property for sale employed by the Special Administrator precluded a sale at the highest and best price?

 (a) Did the method used by the Special Administrator in valuing the property constitute a failure to act diligently and in a prudent and businesslike manner?

 (b) Did the manner of offering the property for sale used by the Special Administrator constitute a failure to act diligently and in a prudent and businesslike manner?

2. Did the Special Administrator breach his fiduciary duty to the beneficiaries of the estate in failing to provide information to them regarding the valuation and sale of the real property?

Our answer to each of the questions is "No"; consequently, we shall affirm.

## Factual Background

The Estate of John Briscoe Howes was admitted to probate in 1986. One testamentary provision of the will stated,

All the rest, residue and remainder of my estate, of whatever kind and whatsoever situated, I give, devise and bequeath to my nieces and nephews, the children of my brothers and sisters, in equal shares, share and share alike, per stirpes and not per capita.

The testator also gave his personal representatives

full discretionary power, . . . to take any action desirable for the complete administration of my estate, including the power to sell, at public or private sale, any real . . . property belonging to my estate at whatever prices and upon whatever terms my personal representatives shall deem advisable. . . .

A principal asset of the estate was a large parcel of real estate, containing at least 100 acres of land, in Calvert County.

During the course of the subsequent six years, the co-personal representatives, Spencer Howes, James Bourne, and Bourne Howes, three nephews of the testator, were not able to reach a mutually acceptable disposition of the real property. In 1988, several of the beneficiaries expressed their opinion that the property should be sold to the highest bidder. Discussions were held over the years regarding attempts to divide the property, and in 1992 several of the beneficiaries expressed concern regarding a conflict of interest involving one of the co-personal representatives. In June 1992, the orphans' court was informed that the personal representatives could not agree on the disposition of the property. On 20 July 1992, the three co-personal representatives filed their resignation with the orphans' court.

The orphans' court appointed Richard D. Lloyd (hereinafter "Lloyd" or "appellee"), an attorney in general practice in Calvert County, as special administrator. Lloyd was granted by the court "full authority to pursue a course of action, as deemed necessary, to manage and sell the estate's real property in a fair and expeditious manner, subject to this Court's

approval of contract of sale...." No objections were raised by any party to either the selection of Mr. Lloyd or the terms of his appointment.

Mr. Lloyd attempted to have a meeting with the three former personal representatives. Two of the former personal representatives attended; appellant did not.

Lloyd had a title search done, made a physical tour of the property, and engaged a local engineering firm, Collinson and Oliff & Associates, to advise him on the best use or development potential of the property. He then had an independent appraisal performed by L.W. Fey, ASA, an appraiser with offices in Mayo and Hyattsville. The appraisal established a property value of $540,000.

Lloyd determined that it would be appropriate to offer the opportunity to purchase first to family members and interested persons, through a solicitation to submit a written bid. Terms were set at cash, with a minimum acceptable bid price of $600,000. A solicitation letter was sent to family members and about one dozen others who had either expressed interest or had inquired about the sale after the letter was initially distributed.

These solicitation letters were sent to a group that included at least three prominent local builder/developers, a realtor, several private individuals, a state senator, and an environmental organization that had expressed an interest in purchasing the property. In addition, the special administrator testified that he had contacted "several people," including two real estate agents, to "tell them that they should make a bid if they were interested."

One bid for $606,000 was received by the 15 May 1993 deadline. The successful bidder, Thomas Miller, stated that he had learned of the sale from a builder who was doing work on the house of one of the other heirs.

On 19 May 1993, Lloyd filed a petition to sell the property to Miller pursuant to the $606,000 bid. On 8 June 1993 appellant filed an opposition to the petition, contending that

the manner in which the property had been offered was inadequate to assure the best and highest price. Lloyd filed a response on 14 June 1993. On 29 June 1993, a hearing was held before the orphans' court. At the conclusion of the hearing, following a brief recess, the orphans' court issued an order from the bench granting the petition and approving the sale.

## I.

In our review of the orphans' court's decision, we are obliged to consider evidence produced at the hearing below in a light most favorable to the prevailing party. *Cassel v. Pfaifer*, 243 Md. 447, 453, 221 A.2d 668 (1966). If there was substantial evidence supporting the factual conclusions of the orphans' court when viewed in a light most favorable to the prevailing party, the decision is not clearly erroneous and will not be disturbed. *Geo. Bert. Cropper, Inc. v. Wisterco Investments, Inc.*, 284 Md. 601, 399 A.2d 585 (1979). The burden is on appellant, who opposed the sale, to convince the court that the sale should not be ratified. *Kramme v. Mewshaw*, 147 Md. 535, 128 A. 468 (1925). The court found that appellant did not meet this burden. Since there was substantial evidence to support the court's determination, we agree and affirm.

## A.

Appellant's main argument is that Lloyd failed to act with diligence and in a prudent and businesslike manner, evidenced by the method used to value the property and the manner in which the property was offered for sale. Specifically, appellant complains that there was no public notice of the sale and no advertising.

Appellant argues that the test to be followed is that set forth in *Feldman v. Feldman*, 234 Md. 173, 176–77, 198 A.2d 257 (1963):

> It was their duty, therefore, in making a sale of the property to act in a *prudent and business-like manner*, with

a view to obtain as large a price as might, with due diligence and attention, be fairly and reasonably obtainable under the circumstances. In other words, to exercise that diligence and caution which a careful and prudent owner would observe in the sale of his own property. If the sale be made under circumstances of haste and imprudence, or if the trustees fail in reasonable diligence in inviting competition, or adopt an injudicious and disadvantageous mode of selling the property, a Court of equity ought not ratify the sale. (Emphasis in original.)

*Feldman,* like the other cases cited by appellant, involved the sale of property by a trustee under a testamentary power. In the instant case, Lloyd is a special administrator, a fiduciary appointed by an orphans' court order to sell the real property.

The orphans' court ordered that Lloyd assume all duties unperformed by the personal representatives as set out in Md.Code (1974, 1991 Repl.Vol.) § 6–403 of the Estates and Trusts Article (ET), and he was given "full authority to pursue a course of action, as deemed necessary, to manage and sell the estate's real property in a fair and expeditious manner, subject to this Court's approval of contract of sale...."

When the actions of the special administrator are examined under the *Feldman* standard, with an emphasis on the court's charge to act in a fair and expeditious manner, it is clear that Mr. Lloyd properly fulfilled his duties.

Appellant argues that the special administrator
needed to secure the opinions and expertise of local real estate persons who would have been familiar with the residential development market in Calvert County instead of depending on one appraisal by an appraiser outside of the county whose background more heavily involved commercial uses and easements rather than rural residential development.

Appellant compares the situation to that in *Webb and Knapp, Inc. v. Hanover Bank,* 214 Md. 230, 133 A.2d 450 (1957). *Webb* involved a unique tract of 2,227 acres in Prince George's County that trustees offered for sale at a stated asking price.

The appraisal for the trustees in *Webb* was made by an out-of-state appraiser. The Court of Appeals affirmed the circuit court's refusal to ratify the sale based on the valuation made of the property by the out-of-state appraiser. The court found that reasonable prudence would have called for the New York appraiser to consult with local experts in determining the value of the tract. The Court was particularly troubled by evidence of the appraiser's unfamiliarity with local conditions, as shown by references to non-existent zoning regulations.

In this case, the appraiser used by Lloyd was from a neighboring county and had appraised other properties in Calvert County. The appraiser consulted with the county Department of Works regarding property access and road development requirements, and backed up his own knowledge and analysis with a review of the property by local engineering firm Collinson and Oliff, commissioned by appellee to advise on the property's development potential. He reviewed the economic feasibility of the project based on past history, current market, and future anticipated demand. While appellant complains that appellee personally was not familiar with the property's history, he employed an appraiser who became familiar with the property and was able to give an informed appraisal based on his review of all the information available.

Lloyd had personal experience dealing with real estate in Calvert County and believed that the appraisal was consistent with prior valuations. The Court in *Webb* said that the first step in the exercise of prudence, diligence and care in setting a price for the sale was to obtain a "sound appraisal of the property." *Id.* at 244–45, 133 A.2d 450. Appellee presented substantial evidence to show that he did just that. We are satisfied that the orphans' court's determination that Lloyd's method of valuing the property was sound is supported by substantial evidence.

Appellant further complains of appellee's method of sale, contending that the best and highest price cannot be obtained without a public sale and advertising. Appellant argues that

under the *Feldman* standard for *all* fiduciary conduct, Lloyd's conduct falls short.

Appellant cites no authority for the proposition that due diligence requires a public sale. The special administrator was appointed to carry on the personal representative's duties to the estate. Under the terms of the will, the testator gave his personal representative the power to sell his property "at public or private sale, . . . at whatever prices and upon whatever terms my personal representatives shall deem advisable." This case is not like *Knight v. Nottingham Farms, Inc.*, 207 Md. 65, 71–72, 113 A.2d 382 (1955), cited in *Feldman,* where the Court of Appeals reversed an order of the Orphans' Court for Baltimore County ratifying a sale of land made under a testamentary power of sale because the executor neglected to advertise the property for sale, failed to show it to prospective buyers and did not seek expert advice in valuing the property. The Court found that "the executors did nothing more than remain dormant and receive such offers as might be brought to them. They apparently made no substantial effort to obtain a better offer. They did not obtain expert advice as to the value of the property." 207 Md. at 78, 113 A.2d 382.

Lloyd, using his best judgment, decided to offer the property first in a private sale to prospective customers known to be interested in the property. Testimony was offered that Lloyd did show the property, and most significantly, he obtained the services of an appraiser well acquainted with the local real estate market. Lloyd compiled a list of prospective bidders, sending out solicitation packages offering the property by way of a sealed bidding procedure. The sealed bid process was chosen to encourage competition while insuring a minimum sale price of $600,000. To be successful, a person who really wants to purchase the property would have to estimate what other prospective purchasers might be likely to bid and then top that figure. Depending on the nature of the property, such a procedure could very well produce a higher selling price than an auction sale.

 The general rule is that if a trustee, acting diligently and without fraud, accepts an offer at a private sale for the most he is able to obtain for the property at the time and reports that offer to the court, the sale will not be set aside merely because someone else is later willing to give more for the property. *Gilden v. Harris,* 197 Md. 32, 42, 78 A.2d 167 (1951); *Pollekoff v. Blumenthal,* 83 Md.App. 85, 95, 573 A.2d 433 (1990). A trustee undertaking to sell trust property has the duty to secure the fair market value of the property and to employ that degree of care, skill and judgment that a reasonably prudent man would exercise in the conduct of a similar sale. A conventional trustee is vested with a certain amount of discretion in making such a sale.

> If a sale should be made by a conventional trustee in good faith and according to his best judgment, the sale will not be set aside unless there exists an inadequacy of price that, under the circumstances, is directly attributable to some failure of reasonable diligence or effort in the making of the sale.

*Kramme v. Mewshaw,* 147 Md. 535, 548, 128 A. 468 (1925). Factors that will be considered in determining whether the trustee exercised the requisite degree of diligence and care include his efforts to determine the value of the property sold, his method of offering the property, and whether he closed the sale without endeavoring to obtain better bids. *Webb & Knapp, Inc. v. Hanover Bank,* 214 Md. 230, 133 A.2d 450 (1957). The trustee need not, under all circumstances, seek the counsel and aid of real estate agents or advertise the property before its sale. *Kramme v. Mewshaw, supra.*

 In ratifying the sale, the orphans' court signified that it found that, under the circumstances, the bidding process was an acceptable method of obtaining the best possible bid at the time and that Lloyd exercised his duties with due diligence. We agree.

## II.

 Appellant's final contention is that appellee breached his fiduciary duty to appellant by failing to provide informa-

tion regarding the valuation and sale of the property. Appellant cites *Shipley v. Crouse*, 279 Md. 613, 370 A.2d 97 (1977), a case that discusses the duty of a fiduciary to keep beneficiaries apprised of the status of the corpus of the estate and of his dealings in the administration. In *Shipley*, the Court of Appeals said that while "there is no doubt in the ordinary case, beneficiaries are entitled to receive complete and accurate information, ... this is not absolute ... if the trustee is acting in good faith and not abusing his discretionary powers." 279 Md. at 625, 370 A.2d 97. The Court went on to say that when negotiations particularly delicate are undertaken, "the beneficiaries are entitled to nothing more than a disclosure of the end product, if the trustees are clothed with a broad discretionary power...." Appellee testified before the orphans' court that "to divulge the appraised value to anyone at that point in time would have seriously undermined the bidding process." Appellee also points out that appellant was sent a copy of the solicitation letter that explained the method of sale and was notified through the Petition to Sell Real Property of Estate as to the outcome of the sale. Appellee contends that at no time prior to the bidding process did any of the interested parties express any difficulty with the proposed method of sale. The court's order granted appellee "full authority to pursue a course of action, as deemed necessary." This broad discretion was not abused, and appellant failed to satisfy the court that appellee did in fact breach his fiduciary duty.

The orphans' court found neither lack of diligence nor breach of duty. We perceive no error in those findings.

**ORDERS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**